487 A.2d 937

COMMONWEALTH of Pennsylvania

v.

Thomas Allen RISPO, Appellant.

Superior Court of Pennsylvania.

Argued May 22, 1984.

Filed Jan. 25, 1985.

Richard P. Abraham, Philadelphia, for appellant.

Seth Weber, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

Before DEL SOLE, MONTEMURO and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court should have suppressed the evidence seized when law officers, without a warrant, entered his home to retrieve certain property and

arrested him. We agree and, accordingly, vacate the judgment of sentence, and remand for a new trial.

On September 5, 1980, appellant was arrested in his home located at 1130 Tennis Avenue in Bensalem Township. He was subsequently charged with possession of a controlled substance, possession of a controlled substance with intent to deliver, delivery of a controlled substance, and conspiracy to possess, possess with intent to deliver, and deliver a controlled substance. On March 16, 1981, appellant's motion to suppress evidence was heard and denied. Jury trial commenced the next day and, on March 20, appellant was convicted of conspiracy but acquitted on the remaining charges. Appellant's post-verdict motions alleged, *inter alia*, that certain evidence seized in the illegal search and seizure should have been suppressed. Appellant, represented by new counsel, also filed a supplemental motion raising the issue of trial counsel's ineffectiveness. On December 3, 1981, the lower court *en banc* denied the post-verdict motions. After several hearings, the lower court, per Judge Biehn, denied the ineffectiveness motion on November 8, 1982. Appellant was then sentenced on December 9, 1982, to four-to-twenty-three months imprisonment. This appeal followed.

The scope of our review of the denial of a motion for suppression of evidence is firmly established. The suppression court must make findings of fact and conclusions of law in determining whether evidence was obtained in violation of the defendant's rights. The burden of proving the admissibility of the evidence lies on the Commonwealth's shoulders; the standard by which the court determines the legitimacy of the search and seizure, and hence the admissibility of the evidence whose suppression has been moved, is that of the preponderance of the evidence.... On appeal we must determine whether the record supports the factual findings of the suppression court, as well as determine the reasonability of any inferences and legal conclusions drawn from the court's findings of fact.

. . . .

In considering whether the record supports the court's finding [sic] of facts we must restrict ourselves to reviewing the evidence presented by the Commonwealth and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. ... In addition, where the suppression court's findings are amply supported by the record they may not be disturbed on appeal. ... Finally, in deciding whether Fourth Amendment dictates have been abridged, we must consider all of the circumstances of the official intrusion, keeping firmly in mind that the ultimate goal of the Amendment is not the protection of preferred locales, but the protection of individuals and their legitimate expectations of privacy....

*Commonwealth v. Eliff*, 300 Pa.Superior Ct. 423, 428–29, 446 A.2d 927, 929–30 (1982) (citations omitted).

So viewed, the facts are as follows: On September 5, 1980, at approximately 2:30 p.m., Jimmy Baker, a paid police informant, went to the Lower Moreland Police Station to meet two narcotics agents from the Bureau of Drug Control of the Pennsylvania Attorney General's Office and other police officers. Baker was then fitted with a body wire, given $11,000 in marked currency (the serial numbers of the bills had been previously recorded by the agents), and placed under electronic surveillance from a police van. At approximately 4 p.m., Baker left the station for a prearranged meeting with Gary Christopher, a hairdresser, at the Cosmic Hair Studio located on Bustleton Avenue in the Northeast section of Philadelphia, in order to purchase one pound of methamphetamine. Agents Randolph Bordeleau and William Miller followed in the police van while Agent Steven Richardson followed in a separate vehicle. Baker arrived at the hair salon at about 4:45 p.m., showed the money to Christopher, and negotiated the drug transaction. Christopher told Baker that he would have to make a call for the drugs. After making two telephone calls, Christo-

pher informed Baker that only seven ounces of methamphetamine were available, that the price was $7,500, and that they would have to go and get the drugs. At approximately 6:30 p.m., Baker and Christopher left the hair salon and drove on Woodhaven Road to Bensalem Township. The police followed. At 7 p.m., they stopped near appellant's home at 1130 Tennis Avenue. Baker gave $7,500 to Christopher, and Christopher entered a side door of the residence. After three or four minutes, Christopher returned to the car carrying a brown paper bag. Baker, looking in the bag, saw and smelled methamphetamine. They then drove off but were stopped approximately one-half mile away by law enforcement officers. Agents Richardson and Miller found seven ounces of methamphetamine and $3,500 cash in a bag on the front seat of the car. They wanted to retrieve the rest of the money so Baker told them which door of appellant's residence Christopher had entered and exited from. Agent Bordeleau, followed by Agent Richardson, approached the side door of appellant's home at a fast pace with a gun in one hand and displaying his official identification badge in his other hand. When he came within five feet of the door, it was opened by appellant's ten-year-old daughter. At this time, Agent Bordeleau raised his badge, loudly announced, "Police," and then observed appellant "dart from view." Agent Bordeleau immediately entered the house through the side door (into the kitchen) and proceeded in the direction appellant had gone (into the living room). As Agent Bordeleau entered the living room, he saw appellant about to sit down in a chair. He also saw a black briefcase on an ottoman located less than one foot from appellant. Agent Bordeleau stated, "Police, where's our money?" Appellant opened the briefcase, and Agent Bordeleau observed a large amount of cash sitting on top of the contents inside. The serial numbers of the bills contained in the briefcase matched the numbers on the bills given to Baker earlier that day. Appellant was then formally placed under arrest. The briefcase and its

230

contents, including the $6,300 [1] in marked bills found therein, were seized.

Appellant asserts that his Fourth Amendment rights were violated when the agents, with guns drawn, entered his home without a search or arrest warrant. The Commonwealth, however, argues that exigent circumstances justified the police conduct. "The Fourth Amendment to the Constitution of the United States 'protects the people from unreasonable government instrusions into their legitimate expectations of privacy.' " *Commonwealth v. Shaw*, 476 Pa. 543, 550, 383 A.2d 496, 499 (1978); *Commonwealth v. Flewellen*, 475 Pa. 442, 446, 380 A.2d 1217, 1219 (1977). With few exceptions, the Fourth Amendment requires that law officers obtain a warrant issued by a neutral magistrate before they intrude into a place of privacy. *Commonwealth v. Morrison*, 275 Pa.Superior Ct. 454, 457, 418 A.2d 1378 (1980) (*en banc*); *Commonwealth v. Gambit*, 274 Pa.Superior Ct. 571, 578, 418 A.2d 554, 557 (1980), *aff'd per curiam* 501 Pa. 453, 462 A.2d 211 (1980); *Commonwealth v. Montgomery*, 246 Pa. Superior Ct. 371, 375, 371 A.2d 885, 887 (*en banc*). "As a general rule, a search and seizure without a warrant is deemed unreasonable for constitutional purposes." *Commonwealth v. Holzer*, 480 Pa. 93, 102, 389 A.2d 101, 106 (1978); *Commonwealth v. Hinkson*, 315 Pa.Superior Ct. 23, 27, 461 A.2d 616, 618 (1983). Furthermore, "The Fourth Amendment safeguard against unreasonable searches and seizures is aimed at deterring, inter alia, physical entry into the home. ... As a result, warrantless searches and seizures inside a home are presumptively unreasonable." *Commonwealth v. Henkle*, 306 Pa.Superior Ct. 346, 352, 452 A.2d 759, 761 (1982). However, warrantless searches and seizures are excused where exigent circumstances exist. *Commonwealth v. Montgomery, supra*, 246 Pa.Superior Ct. at 376, 371 A.2d at 888. Such circumstances arise "where the need for prompt police action is imperative, either because evidence sought to be

1. The discrepancy between the $7,500 given to Christopher and the $6,300 found in the briefcase is not explained in the record.

preserved is likely to be destroyed or secreted from investigation, or because the officer must protect himself from danger to his person by checking for concealed weapons." *Commonwealth v. Holzer, supra,* 480 Pa. at 102, 389 A.2d at 106; *Commonwealth v. Hinkson, supra,* 315 Pa.Superior Ct. at 27, 461 A.2d at 618.

An inquiry to determine whether exigent circumstances exist involves a balancing of the individual's right to be free from unreasonable intrusions against the interest of society in investigating crime quickly and adequately and preventing the disappearance of evidence necessary to convict criminals.... It requires an examination of all of the surrounding circumstances in a particular case, ....
These circumstances will vary from case to case and the inherent necessities of the situation at the time must be scrutinized.

*Commonwealth v. Hinkson, supra,* 315 Pa.Superior Ct. at 27, 461 A.2d at 618 (citations omitted). *Accord, Commonwealth v. Eliff, supra,* 300 Pa.Superior Ct. at 438–39, 446 A.2d at 934–35. "[T]he burden is upon the Commonwealth to prove by a preponderance of the evidence that a search and seizure did not violate the fourth amendment." *Commonwealth v. Silo,* 480 Pa. 15, 21, 389 A.2d 62, 65 (1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1053, 59 L.Ed.2d 94. *Accord, Commonwealth v. Timko,* 491 Pa. 32, 39, 417 A.2d 620, 623 (1980); *Commonwealth v. Zock,* 308 Pa.Superior Ct. 89, 94, 454 A.2d 35, 37 (1982); *Commonwealth v. Mazzella,* 231 Pa.Superior Ct. 247, 250, 331 A.2d 784, 785 (1974). "[T]he Commonwealth must present clear and convincing evidence that the circumstances surrounding the opportunity to search were truly exigent, ..., and that the exigency was in no way attributable to the decision by the police to forego seeking a warrant." *Commonwealth v. Davis,* 270 Pa.Superior Ct. 202, 206, 411 A.2d 250, 252 (1979).

In the instant case, the lower court made the following conclusions of law at the suppression hearing:

I make the following conclusions of law: prior to entering the house Agent Bordeleau had abundant probable cause to believe that a felony had reasonably been committed minutes before within the house and that the perpetrator would be inside.

Number two, prior to entering the house Agent Bordeleau had abundant probable cause to believe that contraband and evidence to the crime was in fact located at the house at 1120 [sic] Tennis Avenue.

Number three, those facts within the knowledge of the agent were sufficient to warrant a person of reasonable caution to believe their existence.

Number four, no search warrant or arrest warrant was obtained.

Number five, the law recognizes that certain situations exist reflecting practical compromises between the interest of the state and in effective law enforcement and the privileges of its citizens.

Number six, the requirement for a search warrant is excused or [sic] exigent circumstances exist.

Number seven, exigent circumstances did exist when the need for prompt police action is imperative either because the evidence sought to be seized is likely to be destroyed or likely to be secreted from investigators.

Number eight, another exigent circumstance is because an officer must protect himself from possible danger to his person by checking for weapons.

Number nine, exception to this warrantless search also arises when the warrantless seizure does not appear to be significant invasion of the defendant's reasonable expectation of privacy.

Number ten, although an [sic] ordinary circumstance there may not be a warrantless arrest of the defendant in his own house, nonetheless this rule is not binding in situations where exigent circumstances exist as I find that they do here, and, therefore, the motion to suppress is denied and the Commonwealth may use the money

which was seized and which is the only thing which was seized in evidence at trial is relevant [sic].

(N.T. Suppression Hearing, March 16, 1981, at 167–69).

We initially agree with the lower court that the state agents had probable cause to believe that a felony had been committed minutes before within appellant's house, that the perpetrator would be inside, and that contraband and evidence of the crime would also be located in the residence at 1130 Tennis Avenue. After negotiating the drug sale, Christopher told Baker that they would have to go and get the drugs from his source. The agents followed Baker and Christopher to the vicinity of appellant's home. Baker, an informant who had been found reliable on previous occasions, confirmed that Christopher entered appellant's residence with $7,500 in marked currency and emerged with a bag containing methamphetamine. When the car was stopped, the agents found only $3,500 of the marked currency and seven ounces of methamphetamine on the front seat. Under these circumstances, the agents could reasonably believe that $7,500 of their marked currency and the drug supplier were inside the house located at 1130 Tennis Avenue.

■ We disagree, however, with the lower court's conclusion that exigent circumstances existed which justified the failure of the agents to obtain a search and/or arrest warrant based upon probable cause prior to entering appellant's home. If the agents had not approached the house but had maintained their surveillance until a warrant was obtained, there is no reason why the evidence sought to be seized would have been destroyed because the occupants of the house were unaware of the police surveillance. There is no evidence in the record to show that the occupants of the house had been tipped off or became suspicious after Christopher, a familiar family acquaintance, visited the home and spoke with appellant. We also find it unlikely that anyone would destroy $7,500 (or $6,300) in cash if he did not know that the bills were marked. Additionally, the agents had no reason to believe that the occupants of the house were

armed or were threatening anyone because the crime involved was not a violent one and there had been no indication of danger. The police could have kept the residence under covert surveillance in relative safety until a warrant was obtained. Balanced against this absence of exigent circumstances was the significant intrusion into appellant's very legitimate expectation of privacy in his own home. Accordingly, we believe that, under the circumstances of this case, the agents should have secured a search warrant before they entered appellant's home in order to retrieve their marked currency. We hold that, in failing to do so, the law officers violated appellant's Fourth Amendment right to be free from unreasonable searches and seizures.

We find those cases in which this Court has found that exigent circumstances existed distinguishable. For example, in *Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101 (1978), the police impounded the defendant's car in Philadelphia and transported it to Bucks County prior to the issuance of a search warrant. We found this procedure justified because (1) the vehicle was highly mobile and (2) the expectation of privacy in one's automobile is *"significantly* less than that relating to one's home or office." *Id.*, 480 Pa. at 103, 389 A.2d at 106 (emphasis in original). In *Commonwealth v. Hinkson*, 315 Pa.Superior Ct. 23, 461 A.2d 616 (1983), the police received a report that a truck was struck by two gun shots, with one shot injuring the driver, as it passed by the defendant's residence and that witnesses heard five shots fired. The police also learned that the defendant had a reputation for violence toward passing motorists (e.g., shooting at snowmobiles, threatening motorcyclists with an axe, and swinging a snowplow at a snowmobile). They went to the defendant's residence and, over the P.A. system, requested the defendant to come out. After the defendant came out and was taken away, a trooper knocked on the door and was admitted by the defendant's wife. Upon the trooper's asking if there were any guns in the house, the defendant's 15-year-old son showed the trooper through several rooms, including the

defendant's bedroom, from which the trooper seized various guns and bullets. This Court, in holding that exigent circumstances justified the warrantless search, found that (1) because there were three unaccounted-for shots, the police reasonably concluded that someone in the house could have been held hostage or hurt, and (2) because the police were not certain who fired the shots, to delay action while a search warrant was obtained would have unduly risked the lives of the public and the police. In *Commonwealth v. Montgomery*, 246 Pa.Superior Ct. 371, 371 A.2d 885 (1977), the police, investigating an armed robbery which had just taken place, received information that the perpetrators were inside premises located about a block away. Fifteen minutes later, police, without a warrant, entered the premises and arrested the defendant. We held that "exigent circumstances" and "hot pursuit" justified the warrantless entry and arrest. Finally, in *Commonwealth v. Phillips*, 244 Pa.Superior Ct. 42, 366 A.2d 306 (1976) (*en banc*), we found a warrantless search of a house reasonable on the following facts: A reliable informant told police that the defendants were in the process of cutting and packaging a substantial quantity of herion at a house and that the defendants intended to leave the house within twenty minutes. After several unsuccessful attempts to locate a magistrate to get a warrant, the police went to the house and surrounded it. Several people congregated near the officers "making a lot of noise." The police knocked several times and identified themselves. When the owner opened the door, the police observed three men sitting at the dining room table which was laden with heroin and various cutting and packaging paraphernalia. The defendants saw the officers and attempted to escape whereupon the police entered and arrested the three men.

It is clear that the exigency which existed in each of the above-discussed cases is absent from the instant case. Here, there was no immediate threat of danger to the public or to police, no reason to believe that the occupants of the

house at 1130 Tennis Avenue were armed, no "hot pursuit", no attempts to secure a warrant, and no time pressures.

Instead, we find *Commonwealth v. Anderson*, 272 Pa.Superior Ct. 167, 414 A.2d 1060 (1979), more analogous. There, police detectives, without an arrest or search warrant, went to the defendant's residence after receiving information from witnesses to a stabbing death that the defendant was the perpetrator. They identified themselves to the defendant's stepfather and told him that they were searching for the defendant in connection with a murder. The stepfather directed the police to a second floor bedroom whereupon the police looked under the defendant's mattress and found a knife. Under these circumstances, this Court held that the knife should have been suppressed because it had been seized in an invalid warrantless search of the defendant's bedroom. We reasoned that the stepfather's consent had been limited to a search for the defendant and did not extend to a general search for weapons. We also concluded that there was no indication from the record whereby the police might reasonably have believed that they were confronted with an emergency in which the delay necessary to obtain a warrant would have threatened the destruction of evidence. In responding to the argument that the stepfather might have removed the weapon, we stated that the mere presence of other persons does not justify an inference that evidence will be destroyed or removed and that one officer could have remained to guard the premises while the others obtained a search warrant. Similarly, here, the residence could have been watched while a warrant was obtained, and there is no indication in the record that an emergency situation existed whereby the $7,500 would have been destroyed if the agents had delayed entry into appellant's home until a search warrant was secured.

Having found that the warrantless search and seizure in the instant case was not justified by the presence of exigent circumstances and, was therefore illegal, we hold that the evidence seized in violation of appellant's constitutional

rights should have been suppressed by the court below. *See Commonwealth v. Johnson*, 474 Pa. 512, 520, 379 A.2d 72, 75 (1977) ("Evidence obtained in violation of an individual's right to be free from unreasonable searches and seizures cannot be used against him at trial.").

Accordingly, we must vacate appellant's judgment of sentence and remand for a new trial.[2]

Vacated and remanded. Jurisdiction is not retained.

MONTEMURO, J., files a dissenting statement.

MONTEMURO, Judge, dissenting:

I respectfully Dissent and would affirm on the Opinion of the trial judge, the Honorable Kenneth G. Biehn.

2. Because of our disposition of this case, we need not address appellant's remaining contentions.