**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Collin M. ROWE, Appellant.**

Superior Court of Pennsylvania.

Argued March 17, 2009.
Filed Nov. 12, 2009.

Sean P. McGraw, Bellefonte, for appellant.

Michael T. Madeira, Asst. Dist. Atty., for Com., appellee.

BEFORE: BOWES, DONOHUE, and FREEDBERG, JJ.

OPINION BY BOWES, J.:

¶ 1 It was a dark and stormy night on June 8, 2007, when the wind howled and rain fell in State College, Pennsylvania. Corporal William Muse of the State College Police Department was in the area of East Foster Avenue at 10:38 p.m. assisting with downed power lines in an adjacent alley when he noticed the open rear door of 420 East Foster Avenue, the residence of Collin M. Rowe, Appellant. Corporal

Muse walked the perimeter of the house, noticed lights on upstairs and down, but observed nothing out of the ordinary. He chose to enter the home, called out his identity, and searched the first floor and the basement. The officer thereafter proceeded to the second floor, where he entered Appellant's bedroom,[1] looked in the trash can, and examined the inside of the closet. He found a glass pipe sitting on the desk next to Appellant's computer. He took the pipe, left his business card requesting Appellant to contact him, and left the home.

¶ 2 When Appellant telephoned Corporal Muse, the officer was unavailable, so Appellant left a voice message. In response, Corporal Muse returned to Appellant's home on June 14, 2007, where he spoke to Appellant and a roommate. Thereafter, Corporal Muse charged Appellant with possession of drug paraphernalia on October 1, 2007. Appellant, represented by the Centre County Public Defender's Office, filed a motion to suppress on January 31, 2008. Following a hearing on March 13, 2008, the Centre County Common Pleas Court denied Appellant's suppression motion without opinion on April 4, 2008. Appellant proceeded to a bench trial where he was convicted on April 25, 2008, and sentenced to twelve months probation on May 19, 2008. This appeal followed. We vacate and remand for a new trial.

¶ 3 On appeal, Appellant asserts that the court erred in failing to suppress the marijuana pipe found as a result of the officer's warrantless entry and seizure of the item. Our standard of review of an order denying a motion to suppress is settled:

We are limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. We may consider the evidence of the witnesses offered by the Commonwealth, as verdict winner, and only so much of the evidence presented by defense that is not contradicted when examined in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court were erroneous.

*Commonwealth v. Fickes,* 969 A.2d 1251, 1254 (Pa.Super.2009) (citing *Commonwealth v. Hughes,* 908 A.2d 924, 927 (Pa.Super.2006)).

¶ 4 The trial court determined that Corporal Muse was legally on the premises due to the combination of the open door and the storms in the area and lawfully seized the marijuana pipe in the upstairs bedroom because it was in plain view. The record does not substantiate this conclusion, and thus, we cannot agree. Moreover, the trial court's Pa.R.A.P. 1925(a) opinion contains a number of misrepresentations of the testimony. For example, the court stated that Corporal Muse entered Appellant's home because he saw that the back door was "blown open." Trial Court Opinion, 8/5/08, at 3. There was no suppression testimony that the door was "blown" open, only that it was open. The court represented that the officer "expended no effort" beyond looking around the room to make sure no one was injured. Trial Court Opinion, 8/5/08, at 3. In fact, Corporal Muse inspected Appellant's desk top, trash can, and closet interior. N.T. Suppression, 3/13/08, at 6, 11, 12. Finally, the trial court stated that after Corporal Muse left his business card on the desk with directions to contact police, Appellant never complied. Trial Court Opinion, 8/5/08, at 2. The officer specifically testi-

---

1. The officer testified both that the other upstairs bedrooms were locked but he "did not try any of them." N.T. Suppression, 3/13/08, at 6.

fied, however, that Appellant telephoned Corporal Muse and left a voice message. N.T. Suppression, 3/13/08, at 8.

■ ¶ 5 Whether there were exigent circumstances justifying Corporal Muse's warrantless entry into Appellant's residence is at the heart of the matter. We recently explained the relevant legal concepts in such a case, as follows:

"The Fourth Amendment to the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution require that searches be conducted pursuant to a warrant issued by a neutral and detached magistrate." *Commonwealth v. Copeland,* 955 A.2d 396, 399 (Pa.Super.[2008] ), *appeal denied,* 599 Pa. 706, 962 A.2d 1194, 2008 WL 5087421 (Pa., Dec 03, 2008). "A warrantless search or seizure is *per se* unreasonable unless it falls within a specifically enumerated exception." [*Commonwealth v.*] *Wright,* 599 Pa. at 301, 961 A.2d [119] at 137 [(Pa.2008) ]. Exigent circumstances provide one such exception to the warrant requirement. *Commonwealth v. English,* 839 A.2d 1136, 1141 (Pa.Super.2003). In *Commonwealth v. Roland,* 535 Pa. 595, 637 A.2d 269 (1994), our Supreme Court provided the following description of the applicable constitutional principles relating to exigent circumstances:

In a private home, searches and seizures without a warrant are presumptively unreasonable. Absent probable cause and exigent circumstances, the entry of a home without a warrant is prohibited under the Fourth Amendment. In determining whether exigent circumstances exist, a number of factors are to be considered:

(1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is strong reason to believe that the suspect is within the premises being entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, i.e., whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified.

Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or danger to police or other persons inside or outside the dwelling. Nevertheless, police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests.

*Id.* at 600, 637 A.2d at 270–71 (quotations and citations omitted); *Commonwealth v. Bostick,* 958 A.2d 543, 557 (Pa.Super.2008). Moreover, this Court has observed that, "the Commonwealth must present clear and convincing evidence that the circumstances surrounding the opportunity to search were truly exigent, and that the exigency was in no way attributable to the decision by police to forego seeking a warrant." *Commonwealth v. Rispo,* 338 Pa.Super. 225, 487 A.2d 937, 940 (1985) (quoting *Commonwealth v. Davis,* 270 Pa.Super. 202, 411 A.2d 250, 252 (1979)).

*Commonwealth v. Lee,* 972 A.2d 1, 3–4 (Pa.Super.2009) (footnote omitted); *see also Commonwealth v. Gibbs,* 2009 PA Super 181, 5, 981 A.2d 274 ("Absent probable cause and exigent circumstances, warrantless searches and seizures in a private home violate both the Fourth Amendment

and Article 1 § 8 of the Pennsylvania Constitution.") (footnote omitted).

¶ 6 As in *Lee,* a balancing of the *Roland* factors demonstrates a lack of exigency for a warrantless search of Appellant's home. In fact, there are **no** factors that can arguably support Corporal Muse's entry into the home. The fact that a door is open during evening hours on a June night certainly does not support such entry. People routinely leave doors ajar to get fresh air, and it is not unusual that one would do so during typical waking hours of the night. This event did not occur at 3:00 in the morning. It was not the middle of winter. The officer's suppression testimony is telling:

By [Defense Counsel]:

Q. Sir, had you received any reports of anyone lurking suspiciously around that apartment during the period of time that you were in that vicinity?

By [Corporal Muse]:

A. No.

Q. Had you received any reports of any suspicious activity around that apartment during that day?

A. I'm not aware of during the day, no, I did not.

. . . .

Q. You went into this home at night then; is that right?

A. Yes, sir.

Q. And were you aware of any reports of any suspicious activity at any time in the week prior to the time you went into this home . . . ?

A. No, sir.

Q. You didn't see anyone around this residence?

A. No, sir.

Q. You had no evidence that any criminal activity was taking place inside this home?

**A. I had an open door in which doors are not usually open at night.**

. . . .

Q. Now, when you initially entered this home through the open door, did you see any evidence at that time when you went in that it had been burglarized?

A. Not downstairs, no.

Q. No signs of forced entry; is that correct?

A. I did not see any signs of forced entry, no.

Q. And you didn't have any information that anyone was in any type of medical distress in this home; is that correct?

A. No, sir, I did not have any information regarding that.

Q. And you didn't make any observations that would lead you to believe that anyone was in medical distress in this home?

A. No, sir . . . .

N.T. Suppression, 3/13/08, at 8–10 (emphasis added).

¶ 7 On the strength of only an open doorway on an evening when there had been storms, Corporal Muse entered Appellant's house and proceeded to go from room to room, calling out his status as an officer, checking whether anyone was home. When he arrived upstairs, he entered Appellant's bedroom, where he observed an empty glass pipe sitting next to a computer on a desk, mail addressed to Appellant in the trash can, and a paycheck on a dresser top that was lodged in the bedroom closet.

¶ 8 As the testimony established, there was no suspicious activity under investigation, there were no suspects, armed or otherwise, believed to be present or feared to flee, there was a dearth of probable cause regarding any event, and the police

entry was at night. Weighing the above factors under the circumstances of this case, we conclude that no exigency existed to justify Corporal Muse's warrantless entry into Appellant's residence. As we observed in *Commonwealth v. Fickes, supra,* we are mindful that our determination "involves a balancing of the individual's right to be free from unreasonable intrusions against the interest of society in investigating crime quickly and adequately and preventing the disappearance of evidence necessary to convict criminals." *Id.* at 1259 (citing *Commonwealth v. Hinkson,* 315 Pa.Super. 23, 461 A.2d 616, 619 (1983)).

¶ 9 The trial court attempted to justify the search and seizure with reliance upon the plain view doctrine.

The plain view doctrine permits the warrantless seizure of an object in plain view when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object. *Commonwealth v. Collins,* 950 A.2d 1041, 1045 (Pa.Super.2008) (*en banc* ) (citing *Commonwealth v. McCree,* 592 Pa. 238, 924 A.2d 621, 628–29 (2007)).

*Commonwealth v. Gonzalez,* 979 A.2d 879, 885–86 (Pa.Super.2009) (footnote omitted); *see also Commonwealth v. Turner,* 2009 PA Super 190, 982 A.2d 90.

¶ 10 We concede that the second prong, that the incriminating nature of the glass pipe was immediately apparent to police, was met. Indeed, we explained in *Gonzalez* that drug paraphernalia can be identified by a police officer with the requisite training even though there is an absence of the accompanying drugs themselves at the scene. *Gonzalez, supra* at 886.

¶ 11 We have no hesitation in concluding, however, that the first and third prongs were not met herein. We already

determined that Corporal Muse was not lawfully in the upstairs bedroom; thus, his view of the marijuana pipe was not from a lawful vantage point. It is likewise clear that the officer did not have a lawful right of access to the object. Our Supreme Court stated:

*Horton* [*v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) ], explained the determination regarding whether there is a lawful right of access:

"This is simply a corollary of the familiar principle ... that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' " Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.

*Horton,* at 137 n. 7 [110 S.Ct. 2301] (quoting *Coolidge v. New Hampshire,* 403 U.S. 443 [91 S.Ct. 2022, 29 L.Ed.2d 564] (1971)) (internal citations omitted)....

. . . .

Therefore, under the Fourth Amendment, an officer may not seize contraband in plain view unless a prior justification provided the officer a lawful "right of access" to the item. *Id.* [*Commonwealth v. Graham,* 554 Pa. 472, 721 A.2d 1075 (Pa.1998) ].

*Commonwealth v. McCree, supra* at 627–28. Since there were no exigent circumstances, Corporal Muse had no lawful right of access to the pipe. *Commonwealth v. Dean,* 940 A.2d 514, 523 (Pa.Super.2008) ("[B]ecause the police were not in a position where they were entitled to be when

they observed the content of the premises (drugs and money), the 'plain view' doctrine does not come into play to sanitize their illegal entry into Appellee's hotel room.").

¶ 12 Thus, we conclude that the entry into Appellant's residence by Corporal Muse was illegal and any evidence seized in violation of Appellant's constitutional rights should have been suppressed. *Commonwealth v. Lee, supra.*

¶ 13 Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.