J-A12028-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSHUA PAUL WHITTAKER, | |
| Appellant | No. 1763 EDA 2013 |

Appeal from the Judgment of Sentence June 5, 2013
in the Court of Common Pleas of Montgomery County
Criminal Division at No.: CP-46-CR-0000958-2012

BEFORE:  SHOGAN, J., STABILE, J., and PLATT, J.[*]

DISSENTING MEMORANDUM BY PLATT, J.:　　　**FILED OCTOBER 29, 2014**

I respectfully dissent.  I conclude from the record that under our standard of review the trial court properly decided in the totality of circumstances to deny the motion to suppress evidence obtained on execution of a night time search warrant.  In my view, the challenged preliminary "searches," (more precisely, warrantless entries before the night search warrant was issued and executed), were justified by exigent circumstances.  Furthermore, because there was no illegal search, there is no antecedent illegality requiring application of the "fruit of an illegal search" exclusion.  I would affirm the trial court's denial of suppression.

---

[*] Retired Senior Judge assigned to the Superior Court.

In addition to the authority cited by the learned Majority, I note the following applicable legal principles:

> [O]nly in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a warrantless search.

> \* \* \*

> Exigent circumstances may excuse an otherwise unconstitutional search. [***Commonwealth v.*** ]***Wright****,* [742 A.2d 661, 664 (Pa. 1999). In determining whether exigent circumstances exist, one factor the court may consider is whether there is "a likelihood that evidence will be destroyed if police take the time to obtain a warrant. . . ." ***Commonwealth v. Roland****,* 535 Pa. 595, 637 A.2d 269, 271 (1994) (citations omitted).

***Commonwealth v. Wright***, 961 A.2d 119, 137-38 (Pa. 2008) (some citations omitted) (concluding trial court did not err in holding exigent circumstances justified seizure of evidence without warrant; trial court properly denied appellant's suppression motion). Also,

> It is well established that "[a]bsent probable cause and exigent circumstances, warrantless searches and seizures in a private home violate both the Fourth Amendment and Article 1, [Section] 8 of the Pennsylvania Constitution." ***Commonwealth v. Gibbs****,* 981 A.2d 274, 279 (Pa. Super. 2009). Our courts have extended this constitutional protection to the curtilage of a person's home by analyzing "factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." ***Id.*** at 279. "Curtilage is entitled to constitutional protection from unreasonable searches and seizures as a place where the occupants have a reasonable expectation of privacy that society is prepared to accept." ***Commonwealth v. Fickes****,* 969 A.2d 1251, 1256 (Pa. Super. 2009).

*Commonwealth v. Simmen*, 58 A.3d 811, 815 (Pa. Super. 2012).

Furthermore,

> It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony. Moreover, with respect to our scope of review on suppression issues, our Supreme Court has held: "it is appropriate to consider **all** of the testimony, not just the testimony presented at the suppression hearing, in determining whether evidence was properly admitted." *Commonwealth v. Chacko*, 500 Pa. 571, 459 A.2d 311, 318 n.5 (1983) (emphasis in original); *see also Commonwealth v. Charleston*, 16 A.3d 505, 516–518 (Pa. Super. 2011) (collecting cases and explaining *Chacko*).

*Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa. Super. 2013) (one citation and some quotation marks omitted).

Preliminarily, here, the learned Majority's analysis concedes that the police had probable cause.[1] (*See* Majority, at *13) (*e.g.*, "Sergeant [Robert J.] Matalavage had probable cause . . . ." and further "[b]ecause probable cause alone cannot suffice . . . ."). (*See also* Majority, at *19 n.9) ("even though [the] police officers had probable cause . . ."). Therefore, the sole issue remaining for review of Appellant's challenge to the denial of suppression is the existence of exigent circumstances. To the extent

---

[1] Nevertheless, it bears noting that "[p]robable cause justifying a warrantless arrest is determined by the **totality of the circumstances**. . . . Furthermore, probable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent persons act." *Commonwealth v. Simmen*, 58 A.3d 811, 817 (Pa. Super. 2012) (emphasis added) (citation omitted).

possible, I limit my discussion to that issue. *See Commonwealth v. Lee*, 972 A.2d 1, 3 (Pa. Super. 2009).

The learned Majority enumerates the factors to be considered in determining whether exigent circumstances exist, citing **Roland**, **supra**. (**See** Majority, at *12, 13).[2] For this determination, our Court has observed that "[a]n analysis of these factors requires an examination of **all** of the surrounding circumstances in a particular case. These **circumstances will vary from case to case and the inherent necessities of the situation at the time must be scrutinized**." *Fickes*, *supra* at 1255 (emphases added) (citation omitted).

In my view, the Majority misapplies our standard and scope of review by its side-by-side comparison of factors from other cases, as if the factors from those other cases, like evidence of driving under the influence (DUI), *vel non*, constitute a *per se* checklist against which the denial of suppression in this appeal must be measured. (**See** Majority, at 11-18). DUI may be an

---

[2] The "**Roland**" factors are taken from **Commonwealth v. Wagner**, 406 A.2d 1026, 1031 (Pa. 1979), which derived them from **Commonwealth v. Williams**, 396 A.2d 1177, 1179-80 (Pa. 1978). **Williams** borrowed the seven considerations from **Dorman v. United States**, 435 F.2d 385, 392 (C.A. D.C. 1970). Our caselaw sometimes refers to the review of the **Roland** factors as "**Dorman** analysis." **See** Pennsylvania Criminal Procedure, Elements, Analysis & Application, Bruce A. Antkowiak, editor, 3rd Ed., at 182 n.88.

example of exigent circumstances. It is not the *sine qua non* of exigent circumstances.

To the contrary, on appellate review, as recognized in principle by the learned Majority, we must accept **all** the findings of fact made by the trial court which are supported by the record. (**See** Majority, at *7-8), (citing **Commonwealth v. Berkheimer**, 57 A.3d 171, 177 (Pa. Super. 2012) ("Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.")); **see also Fickes**, **supra** at 1255 (requiring "an examination of **all** of the surrounding circumstances in a particular case.") (emphasis added) (citation omitted). We may not re-weigh the evidence considered by the suppression court. **See Clemens**, **supra** at 378.

However, disregarding these requirements, the Majority concludes that even "[t]hough the driver of the Subaru hit several parked cars, no evidence of record exists—and the trial court did not find—that the driver left a 'trail of destruction' on the roadway like the defendant in **Fickes**." (Majority, at 17). Here, in my view, the Majority seeks, by an adverse comparison with the metaphor borrowed from **Fickes**, to re-characterize the findings of the trial court. This checklist comparison approach disregards the "all of the surrounding circumstances" requirement in favor of an impermissible

attempt to re-weigh the evidence. It is also unsupported by the record or controlling authority (or the facts in **Fickes**).

The Majority also misapprehends the underlying facts on which it bases its analysis. For example, the Majority maintains that "[h]ere, like **Lee** and **unlike Fickes**, police officers were investigating a hit and run." (Majority, at *17) (emphasis added); (**see also id.**, at 13-19). However, after the introductory paragraph **Fickes** plainly states: "In the early morning hours of August 20, 2007, Officer Gary Ross received a dispatch call to respond to a **hit and run** accident." **Fickes**, **supra** at 1253 (emphasis added).

Furthermore, "[i]n so doing [reviewing the findings of the suppression court], we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." **Berkheimer**, **supra** (citation and internal quotation marks omitted). Here, Appellant presented no evidence. (**See** N.T. Suppression Hearing, 7/03/12, at 43). Therefore, there is no additional evidence to consider and the evidence of the Commonwealth, read in the context of the record as a whole, stands uncontradicted.

From my independent review of this case, I would conclude that the findings of the suppression court are amply supported by the record. Accordingly, this Court is not at liberty to re-weigh the evidence or disturb the suppression court's ruling on the implicit supposition that **other** facts

might have made a more compelling case of exigent circumstances for the Majority.

Similarly, I conclude that the Majority misapprehends the scope and application of our standard of review, *e.g.*, in its determination that the gravity of the offense was low (the "first" **Roland** factor), because the police were only investigating a report of property damage from a hit-and-run accident. (**See** Majority, at 15). In this context, it bears repeating that "[a]n analysis of these factors requires an examination of **all** of the surrounding circumstances in a particular case. These **circumstances will vary from case to case and the inherent necessities of the situation at the time must be scrutinized**." **Fickes**, **supra** at 1255 (emphases added) (citation omitted). **See**, **e.g.**, **Commonwealth v. Dommel**, 885 A.2d 998, 1004 -1005 (Pa. Super. 2005), *appeal denied*, 920 A.2d 831 (Pa. 2007) (reversing suppression; even though appellant not charged with violent offenses, his actions in hit-and-run incident indicated either callous disregard of, or inability to regard at all, both violent automobile collision which he caused and subsequent official commands to stop. Though appellant was neither wanted for a felony nor believed to be armed, there was nevertheless reason under these facts to consider him either chemically impaired or highly unpredictable and perhaps dangerous; actions thus warranted immediate pursuit).

Here, the police were faced not merely with a case of property damage (the dimensions of which it was impossible to determine before completing their investigation), but a **missing** hit-and run driver, (unlike **Lee**, **supra** at 2, where the appellant's wife told the police he was asleep in their house), who could have been driving under the influence, who might have been injured from the multiple collisions, who might have been hiding with an intent to escape into the darkness, even the possibility that there were other passengers (who also might have been injured in the multiple collisions), and last but not least, direct evidence of a marijuana growing operation. Therefore, this case differs factually in many respects from **Lee**.

Even more importantly, the learned Majority overlooks or ignores that there is no indication in **Lee** that the police sought a search warrant. Here, it is undisputed that the police **obtained** a search warrant and **did not seize any evidence until the search warrant was executed**. (**See** N.T. Suppression Hearing, at 13, 31).[3]

I believe the learned Majority also errs by overlooking the complexity of the dual investigation the police had to undertake that evening. Exigent circumstance existed under the "**Roland** factors" not only because of the

---

[3] On execution of the warrant, police discovered and seized a large amount of marijuana inside the toilet bowl, packaging equipment, a scale commonly used to weigh narcotics, cash in excess of $4,000, several books on growing marijuana, two long guns (a .22 and a 30-36), a Tec-9 9 mm pistol, and related items. (**See** N.T. Suppression Hearing, at 31; **see also** Order Sur: Motion to Suppress, Findings of Fact, at 4-5).

ongoing investigation of the unresolved multiple hit-and-run accidents and Appellant's flight, but also because of the subsequent discovery, during the course of the ongoing hit-and-run investigation, of the evidence of a marijuana growing operation in plain view.

In the same vein, I respectfully disagree with the Majority's apparent lack of regard for the **possibility** of personal injury as a result of the motor vehicle accidents. That there was "no evidence that anyone was injured" is not, and should not be, dispositive. (Majority, at *19).

The more appropriate inquiry is whether, given the limited information available to the police at that point in time, it was reasonable for them to consider that someone **might** have been injured, and possibly required emergency attention. Officer Christopher Wienczek, as well as Sergeant Matalavage, so testified: "[B]ased on the amount of damage that was left at the scene, I didn't know if the driver was injured or not." (N.T. Suppression Hearing, 7/03/12, at 14; *see also id.* at 18, 28, 39). Furthermore, because the striking vehicle was not registered to Appellant, there remained the open possibility that the vehicle was stolen. (*See* N.T. Suppression Hearing, at 42).

The trial court was entitled to consider all this testimonial evidence under the totality of the circumstances test. We may not re-weigh the evidence considered by the suppression court. *See Clemens*, *supra* at 378.

An additional consideration supporting a finding of exigent circumstances is that, until Appellant reappeared, it was reasonable for the police to suppose that he might have been hiding, in the house or in the backyard, and consequently, in the darkness, there was the risk of escape. *See Roland*, *supra* at 270-71 (the fifth "*Roland* factor").

Similarly, when Appellant entered his house, flouting the explicit instructions of the police (who were properly trying to secure the premises in expectation of the search warrant), locked the front door behind him, and barricaded himself in the bathroom behind another locked door, it was imperative that the police take prompt action to avoid the possible destruction of evidence, (an additional "*Roland* factor"), which, in the event, is exactly what Appellant tried to do. (*See* N.T. Suppression Hearing, 7/03/12, at 10-11, 31). Appellant refused police orders to come out of the bathroom.[4] (*See id.*, at 10). On execution of the search warrant, police found and recovered a large amount of marijuana inside the toilet bowl.[5] (*See id.*, at 31). This was not a mere likelihood that evidence would be destroyed without immediate police action. Although probable cause is not

---

[4] The police had to knock the door down and "tase" Appellant to subdue him. (*See* Order, Findings of Fact, at 4, ¶ 15; *see also* Stipulations, *supra* at 1).

[5] Police found a half pound of marijuana in the toilet. (*See* Stipulations, *supra* at 2).

to be measured by the result, in this case it is a fact that the likelihood turned out to be a certainty.

To summarize my analysis of the *Dorman* or *Roland* factors, the first factor, gravity of the offense, is satisfied both by the reasonable apprehension of possible injury as well as discovery of evidence of the growth and production of marijuana, an even more serious offense than the hi-and-run incidents; the second factor, suspect reasonably believed to be armed, does not appear to be satisfied, even though on execution of the warrant numerous firearms **were** found in Appellant's house. The Majority concedes the third factor, probable cause. With the striking vehicle parked in Appellant's driveway, there was some reason to believe that the suspect was within the premises being entered, the fourth factor. As to the fifth factor, there was a strong likelihood of escape in the darkness; on the sixth factor, the first entry was peaceable. As to the seventh factor, whether entry was made at night, it was.

Of the "additional" *Roland* factors, I would note that the record abundantly supports the trial court's finding that the police were concerned that Appellant might try to destroy evidence. (*See* Order, 8/23/12, Findings of Fact, at 3, 4). And, given Appellant's unpredictable behavior, the record supports that there was some danger to police or other persons inside or outside the dwelling. (*See id.* at 4 ¶ 15) (Appellant resisted entry by police

and had to be subdued by Taser before he was arrested and removed); ***see also Roland***, ***supra*** at 271.

Balancing these factors against one another, as our caselaw, including ***Roland*** itself, requires, I would conclude that the pre-warrant intrusions made by the police were more than amply justified by exigent circumstances.

I would note specifically that the Majority misapprehends the standard for hot pursuit and erroneously concludes there was none. (***See*** Majority, at 14-15, 17-18). I respectfully disagree.

The Majority relies on ***Commonwealth v. Lee***, 972 A.2d 1, at 5 (Pa. Super. 2009), which, as the Majority notes, was quoting ***Commonwealth v. Rispo***, 487 A.2d 937, at 939 (Pa. Super. 1985):

> In significant contrast, "hot pursuit of a fleeing felon" sufficient to create exigent circumstances for constitutional purposes requires a showing that "the need for prompt police action is imperative, either because the evidence sought to be preserved is likely to be destroyed or secreted from investigation, or because the officer must protect himself from danger. . . ." ***Rispo***, 487 A.2d at 939 (quoting ***Commonwealth v. Holzer***, 480 Pa. 93, 102, 389 A.2d 101, 106 (1978)).

***Lee***, ***supra*** at 5.

***Rispo***, in turn, states:

> However, **warrantless searches and seizures are excused where exigent circumstances exist**. ***Commonwealth v. Montgomery***, ***supra*** at 376, 371 A.2d at 888. **Such circumstances** arise "where the need for prompt police action is imperative, either because evidence sought to be preserved is likely to be destroyed or secreted from investigation, or because the officer must protect himself from

danger to his person by checking for concealed weapons." ***Commonwealth v. Holzer, supra,*** 480 Pa. [93] at 102, 389 A.2d [101] at 106 [(Pa. 1978)]; ***Commonwealth v. Hinkson, supra,*** 315 Pa. Superior Ct. at 27, 461 A.2d at 618.

***Rispo***, ***supra*** at 939-40 (emphases added). Therefore, it is apparent that the ***Lee*** Court mis-read prior authority's explication of **exigent circumstances** to be the definition, or the equivalent, of **hot pursuit**. They are two separate, albeit related, concepts.[6]

As the enumeration in the footnote establishes beyond dispute, the ***Holzer*** Court treated hot pursuit as **one** example of exigent circumstances, not as its equivalent, much less its definition. The Majority's misreading and

_____

[6] Any doubt of this misunderstanding is resolved by reference to ***Holzer***, which, in pertinent part, provides:

> **The warrant requirement, however, is excused where exigent circumstances exist.** Exceptions arise where the need for prompt police action is imperative, either because evidence sought to be preserved is likely to be destroyed or secreted from investigation, or because the officer must protect himself from danger to his person by checking for concealed weapons. [N.5] Exceptions also arise where the warrantless search or seizure by a police officer does not amount to a significant invasion of a defendant's reasonable expectations of privacy. These exceptions reflect practical compromises between the interests of the state in effective law enforcement and the privacy interests of its citizens.
>
> _____
> FN5. Recognized exceptions in this category include **hot pursuit**, emergency situation, incident to lawful arrest and stop and frisk.

***Holzer***, ***supra*** at 106 (emphases added) (one footnote and citations omitted).

reliance on *Lee* perpetuates this misinterpretation. Exigent circumstances are not limited to hot pursuit. In any event, my review of the record confirms that the police here were in hot pursuit **and** had exigent circumstances.

The concepts of hot pursuit and fresh pursuit frequently arise in the context of the Statewide Municipal Police Jurisdiction Act (MPJA), 42 Pa.C.S.A. §§ 8951–8954.[7] *See*, *e.g.*, *Commonwealth v. Reigel*, 75 A.3d 1284 (Pa. Super. 2013) (holding police officer, acting within his primary jurisdiction, is authorized to issue citation for summary offense committed in another jurisdiction). Specifically, sub-section 8953(a)(2) provides that :

> Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

42 Pa.C.S.A. § 8953(a)(2).

Construing the hot and fresh pursuit requirements of section 8953(a)(2), this Court has explained that:

> "[H]ot pursuit" requires some sort of chase, but does not require a "fender-smashing Hollywood-style chase scene" nor "police observation of the criminal activity." Furthermore, pursuit of a suspect may constitute a chase when it is based on witness information as to the location of the suspect. And "fresh pursuit" requires that it be immediate, continuous and uninterrupted.

_____

[7] I observe that in this case the actions of the Limerick police were undertaken to assist the neighboring Royersford police force, where the hit-and-runs occurred.

*Commonwealth v. Peters*, 915 A.2d 1213, 1219 (Pa. Super. 2007), *affirmed*, 965 A.2d 222, 225 (Pa. 2009) (citation and some internal quotation marks omitted). In its affirmance, our Supreme Court further explained:

> While Section 8953(a)(2) requires both "hot pursuit" and "fresh pursuit" to fulfill the exception to the MPJA, the statute does not include definitions for either form of pursuit. However, the Superior Court has defined "hot pursuit" and "fresh pursuit" under Section 8953 and has consistently applied its interpretation of each. Here, the panel ably set forth what is necessary to comply with Section 8953(a)(2). We agree that "hot pursuit" and "fresh pursuit" require some sort of investigation and tracking of the perpetrator and that that pursuit be immediate, continuous and uninterrupted. The facts here support the panel's application of these standards to the instant case and thus confirm its sound findings and conclusion.

*Peters*, 965 A.2d at 225 (footnote omitted).

Here, similarly, my review of the record confirms that the pursuit of Appellant on receipt of the radio dispatch was immediate, continuous, and uninterrupted. The record leaves no doubt that the police were in hot and fresh pursuit. The Majority's citation in support of its contrary conclusion is to *Lee*. (*See* Majority, at 14-15). For the reasons already noted, I find that authority unpersuasive.

Additionally, the Majority's unsupported conclusion that the passage of twenty-to twenty five minutes from the original radio dispatch obviates hot pursuit is unsupported by controlling authority and erroneous. (*See* Majority, at *17-18). There is no arbitrary time limit on hot pursuit. To the

- 15 -

contrary, our Supreme Court and this Court have repeatedly found hot pursuit despite longer time frames than occurred here. *See*, *e.g.*, *Peters*, *supra* at 225 (approving approximately one hour pursuit); *Fickes*, *supra* at 1253 (thirty seven minutes); *Commonwealth v. Brown*, 444 A.2d 149, 153 (Pa. Super. 1982) (thirty minutes).

Finally, I would note that the learned Majority's discussion of curtilage does not provide an alternative ground of relief for Appellant. (*See* Majority, at *9-11).

> In determining what constitutes "curtilage," we consider "factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private. Curtilage is entitled to constitutional protection from unreasonable searches and seizures as a place where the occupants have a reasonable expectation of privacy that society is prepared to accept." *Simmen*, 58 A.3d at 815. *See Gibbs*, (holding that front porch did **not** constitute "curtilage" where there was no front yard or other enclosed space preceding or surrounding the porch, the porch abutted the sidewalk, there was no gate blocking entry to the porch and nothing else that would indicate that it was closed to members of the general public).

*Johnson*, 68 A.3d 930, 936 (Pa. Super. 2013) (emphasis in original) (concluding exigent circumstances justified police officers' warrantless entry into defendant's trailer; officers who detected odor of burning marijuana when ascending steps of trailer reasonably believed that defendant might destroy drugs inside trailer, or otherwise act to frustrate police investigation).

It is the Commonwealth's burden to prove that the search and seizure is valid. ***See id.*** Nevertheless, Appellant's mere invocation of curtilage does not end the Fourth Amendment (or Pennsylvania constitutional) inquiry. (***See*** Appellant's Brief, at 9-10).

> To prevail successfully on a claim of governmental invasion of privacy, [a]ppellee is required first to show that a subjective expectation of privacy exists as to the area being searched. An expectation of privacy is present when the individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable. The controlling consideration is whether the individual contesting the search and seizure entertains a legitimate expectation of privacy in the premises or area searched.

***Commonwealth v. Oglialoro***, 579 A.2d 1288, 1290-91 (Pa. 1990) (citations and internal quotation marks omitted); ***see also Johnson***, ***supra*** at 936; ***Simmen***, ***supra*** at 815.

Here, aside from citing cases for general principles, Appellant fails to develop an argument in support of his specific claim, or to support it with citation to pertinent authority. As already noted, he presented no evidence at the suppression hearing. No new evidence, except for the stipulations, was introduced at the stipulated trial. On appeal, he offers no argument in support of a reasonable expectation of privacy: no gate, no fence, no "No Trespassing" sign, nor anything else, except to declare that there is "no doubt" to his claim. (Appellant's Brief, at 10).

Instead, Appellant cites ***Commonwealth v. Robbins***, 263 A.2d 761 (Pa. Super. 1970) (*en banc*), a *per curiam* affirmance of judgment of

sentence. (*See* Appellant's Brief, at 10). In ***Robbins***, Judge Hoffman, **concurring**, suggests that marijuana plants found in a wooded area twenty-five feet from the appellant's lawn were **not** within the curtilage. ***See Robbins***, *supra* at 761-62. Appellant baldly posits that because his two-foot marijuana plant and 400 watt light bulbs were right outside his back door, his case is "unlike in ***Robbins***[.]" (Appellant's Brief, at 10). I find this argument undeveloped, without citation to pertinent authority. Accordingly, I would find Appellant's curtilage argument waived.

I note that the Majority offers an intermittent, and sometimes confusing, discussion of curtilage. (***See*** Majority, at 9-11, 13, 14 n.6). In any event, it is not the role of this Court to develop arguments for a litigant. "It would be improper for this Court to act as counsel for a party. That is, we must not write a party's brief and develop the analysis necessary to support the party's position." ***Johnson***, *supra* at 936.

Even assuming for the sake of argument that Appellant's two foot marijuana plant was within the curtilage of his home, the question still remains whether the police had exigent circumstances to enter the area behind his house. Just as the existence of probable cause and exigent circumstances may excuse an otherwise unconstitutional search of a private home, they may excuse a search of the curtilage. ***See Wright***, *supra* at 137-38. Controlling case law extends the protections of the home to the curtilage. It does not extend greater protection to the curtilage.

"Curtilage is entitled to constitutional protection from unreasonable searches and seizures as a place where the occupants have a reasonable expectation of privacy that society is prepared to accept." *Simmen*, *supra* at 815 (Pa. Super. 2012), (quoting *Fickes*, *supra* at 1256); *see also Oglialoro*, supra at 1290-91 (claimant required to show subjective expectation of privacy as to area searched).

Here, Appellant failed to develop a cognizable claim of reasonable expectation of privacy. The Majority's somewhat discursive analysis fails to refute that the discovery of the two foot marijuana plant and high wattage cultivation lamps **even if** found in the curtilage, was justified by exigent circumstances.

Because the Majority erroneously concludes that there were no exigent circumstances to enter Appellant's property, it also errs in its conclusion that evidence subsequently seized on execution of the search warrant "should have been suppressed as the fruits of an illegal search." (*See* Majority, at *20). In support, the Majority cites *Commonwealth v. Johnson*, 86 A.3d 182, 187 (Pa. 2014) (holding trial court properly suppressed physical evidence seized by police incident to arrest based solely on invalid, expired arrest warrant). The facts of *Johnson* are inapposite. This is not a question of a defective warrant. *Johnson* plainly does not apply.

Here, there were no fruits of an illegal search. The police had exigent circumstances to enter Appellant's property (and curtilage). They sought

- 19 -

and obtained a warrant. The evidence obtained on the execution of the search warrant was not tainted. *See Commonwealth v. Jackson*, 62 A.3d 433, 440 (Pa. Super. 2013) (holding observations of officers lawfully present in appellant's home when they observed controlled substances in plain view supported issuance of search warrant for appellant's premises; items seized were legally obtained and admissible as evidence against appellant).[8]

The police were in hot pursuit, had exigent circumstances to enter, and properly obtained a search warrant before they seized any materials previously viewed. The trial court correctly denied suppression.

Accordingly, I respectfully dissent.

_____

[8] As previously noted, I have limited my discussion to the issue of exigent circumstances. Because I conclude that the police had exigent circumstances to enter Appellant's property, it is not necessary to address whether the evidence seized was also admissible under the plain view doctrine, or under the inevitable discovery rule. Additionally, I would remand to the trial court, as it requested, for re-sentencing. I join the Majority in its conclusion that the Rule 600 claim is not reviewable on the present state of the record.