J-A06027-19
J-A06028-19

2019 PA Super 175

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| WAYNE ALLEN GRAY JR. | : | |
| | : | |
| Appellant | : | No. 1063 MDA 2018 |

Appeal from the Judgment of Sentence Entered June 27, 2018
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0000226-2017

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| NICOLE HELENA BAKER | : | |
| | : | |
| Appellant | : | No. 1272 MDA 2018 |

Appeal from the Judgment of Sentence Entered June 27, 2018
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0000047-2017

BEFORE:   OTT, J., NICHOLS, J., and PELLEGRINI, J.[*]

OPINION BY NICHOLS, J.:                          **FILED MAY 31, 2019**

_____

[*] Retired Senior Judge assigned to the Superior Court.

Appellants Wayne Allen Gray Jr. (Appellant Gray) and Nicole Helena Baker (Appellant Baker) appeal[1] from the judgments of sentence entered following their convictions at a joint jury trial.[2]  Appellants assert that the trial court erred in failing to suppress evidence obtained when the police unlawfully entered their residence to search for another individual.  We agree and vacate Appellants' judgments of sentence and remand for further proceedings.

In this matter, Appellants both were charged with one count each of hindering apprehension, obstructing administration of law, and resisting arrest after law enforcement conducted a warrantless search of their home on December 17, 2016. Appellants filed motions to suppress the evidence obtained through the search, arguing that the warrantless entry of their home was illegal.   The trial court held a hearing on July 21, 2017, at which Pennsylvania State Police Trooper Lucas Hall, Pennsylvania State Police Corporal David Julock, and Chambersburg Police Department Corporal Shane Good testified.

Trooper Hall testified that on December 16, 2016, he was on duty on the 11 p.m. to 7 a.m. shift.  Trooper Hall received a call for a domestic incident

---

[1] Because these appeals involve the same facts and raise similar issues, we consider the merits of both appeals together.
[2] Appellant Gray was convicted of obstructing administration of law, 18 Pa.C.S. § 5101, a misdemeanor of the second degree.  Appellant Baker was convicted of obstructing administration of law, resisting arrest, 18 Pa.C.S. § 5104, a misdemeanor of the second degree, and hindering apprehension, 18 Pa.C.S. § 5105(a)(1).  The hindering apprehension charge was graded as a felony of the third degree.

that was no longer in progress at a home in Fannett Township. N.T. Suppression Hr'g, 7/21/17, at 7. Trooper Hall indicated that it took approximately forty-five minutes to reach the home where the incident took place. *Id.* at 9.

When Trooper Hall arrived at the home, he spoke with Nicole Harry. *Id.* at 7. She reported that she was in a verbal argument with her boyfriend, Isaiah Baker (Mr. Baker),[3] which she believed would turn physical. *Id.* at 9. She left the residence to call 911 and then he fled the residence. *Id.* Ms. Harry indicated to Trooper Hall that Mr. Baker had kicked the bathroom door where she had been hiding. *Id.* at 14. Trooper Hall observed the bathroom door to be broken with a footmark on the door. *Id.* at 15. Ms. Harry related that Mr. Baker was violent to her in the past, she was afraid the altercation would become physical, and she was scared for her life. *Id.* at 9, 16. Trooper Hall did not observe any physical injury to Ms. Harry, and Ms. Harry did not report suffering physical injury. *Id.* at 15.

Trooper Hall testified, "[Ms. Harry] had stated that [when Mr. Baker left her home,] he had took a gun[4] and an Xbox, along with the ammunition from the said gun. . . . The gun was believed to be a high point 380." *Id.* at 9. Additionally, Trooper Hall received information that Mr. Baker was prohibited

---

[3] Mr. Baker is Appellant Baker's son.

[4] Ms. Harry informed Trooper Hall that she believed the gun was stolen since she had seen it that night prior to the incident. N.T. Suppression Hr'g at 16. We add that Trooper Julock did not find the gun in Appellants' residence and later learned that the gun was at Ms. Harry's home. *Id.* at 24.

from possessing a firearm due to a prior felony conviction. *Id.* at 16-17. After spending approximately one hour at Ms. Harry's residence searching for the firearm without finding it, Trooper Hall notified Corporal Julock "about the things that were missing." *Id.* at 11. Ms. Harry did not testify at the suppression hearing.

Corporal Julock testified that he was the State Police shift supervisor for the overnight shift. *Id.* at 17-18. Corporal Julock received a call from Trooper Hall about "the theft of a handgun during a domestic violence incident up in Path Valley." *Id.* at 18. According to the corporal, Trooper Hall advised him of "the theft of a handgun, who took the handgun [*i.e.*, Mr. Baker], and where he possibly could be going." *Id.* at 18. Corporal Julock testified that he received information that Mr. Baker was going to a residence in Chambersburg. *Id.*

According to Corporal Julock, he arrived at the residence, where he met Corporal Good "and a couple other [borough] police officers." *Id.* Corporal Julock approached Appellants' residence without a search warrant or an arrest warrant. *Id.* at 28, 31. Corporal Julock testified that "he went to the front door, and there was an individual [who] was at the door telling us that we needed a search warrant to go into the house." *Id.* at 19. Corporal Julock then went to the back of the house, where he saw Corporal Good speaking with Appellant Baker. *Id.* Corporal Julock advised Appellant Baker that there was a "theft of the handgun and how we don't need a search warrant because we know [Mr. Baker] is in the house at the time. And being probab[le] cause

- 4 -

of theft and being a handgun, being a felon, we don't need a search warrant to go in and talk to him." *Id.* Corporal Julock stated that Appellant Baker was irate and upset, but that he was "trying to reason with her and the other people in the house at the time." *Id.*

Corporal Julock then testified that "somebody . . . kept coming to the front door,"[5] but that he could not remember who it was. *Id.* at 20. According to the corporal, "[a]fter that we did go into the house." *Id.* The corporal could not recall whether a State Trooper or a Chambersburg police officer went into the house first. *Id.* Once the corporal entered the residence, he saw two individuals were blocking the stairway to the second floor. *Id.* Ultimately, state troopers and local police officers went to the upstairs of Appellants' residence and apprehended Mr. Baker. *Id.* at 21.

On cross-examination at the suppression hearing, Corporal Julock conceded that there was no opportunity for Mr. Baker to harm Ms. Harry at the time he entered Appellants' residence. *Id.* at 22. Corporal Julock asserted that he specifically asked Chambersburg police officers if surveillance was in place "in the front and rear of the residence where the individual could leave the residence" and was told "yes." *Id.* at 25. Further, when defense counsel asked whether he could have "secured the scene, and prevented Mr. Baker

---

[5] The record does not indicate when Corporal Julock went from the back porch to the front door of the residence.

from leaving, and obtained a warrant[,]" Corporal Julock responded, "We could have applied for a warrant, yes." *Id.* at 23.

Corporal Good testified that he was the patrol supervisor of Squad 1 of the Chambersburg Police Department. *Id.* at 26. He received a request from the State Police asking his officers to respond to Appellants' residence in Chambersburg and to be on the lookout for Mr. Baker. *Id.* at 27. Corporal Good, who was the first officer to arrive at Appellants' residence, believed that he arrived sometime after midnight. *Id.* at 31.

When Corporal Good arrived at the residence, he saw Mr. Baker "walking away from" a red vehicle. *Id.* The corporal then radioed his other officers to respond to the residence. According to Corporal Good, "[T]hey set up a perimeter, and we kept an eye on the house until State Police arrived." *Id.* at 28.

According to Corporal Good, he met Corporal Julock when Corporal Julock first arrived at the scene. *Id.* at 28. Corporal Good told Corporal Julock that he saw Mr. Baker, and they proceeded to the front door. *Id.* at 28. Appellant Baker answered the door, and "[t]here was some conflict going on between the troopers and [Appellant] Baker." *Id.* According to Corporal Good, "[t]ensions were pretty high." *Id.*

At some point in time, Appellant Baker went to the back of the house, and Corporal Good went to speak with her. Corporal Good stated that he knew Appellant Baker for a long time, and he wanted to "calm things down." *Id.* Corporal Good testified:

> We were on the back porch. I asked [Appellant] Baker if she would go and get [Mr. Baker], and allow me to talk to him because I have known [Mr. Baker] a long time as well. She went to do that. I was waiting on the back porch and I heard a loud commotion, sounded like a fight going on in the house.
>
> * * *
>
> I entered the house to see what was going on, and I saw troopers fighting with [Appellant] Baker and [Appellant] Gray.

*Id.* at 29.

The trial court issued an order denying the suppression motions on October 6, 2017. In an accompanying opinion, the trial court reasoned that

> while some factors weigh in favor of [Appellants], a balancing of the factors reveals a leaning toward finding the existence of exigent circumstances. . . . "[T]he time of the entry" . . . was at night, which leans in favor of [Appellants]. As to . . . "whether the officer was in hot pursuit of a fleeing felon", while the officers were following up on a reported stolen weapon, they were not in hot pursuit of Mr. Baker. As to . . . "whether there is a likelihood that evidence may be destroyed", the [c]ourt agrees that the likelihood of Mr. Baker destroying the firearm he had reportedly stolen was not high.
>
> However, the following factors weigh in favor of finding the existence of exigent circumstances. As to . . . the "gravity of the offense", Mr. Baker was suspected of engaging in a domestic dispute and thereafter stealing a firearm, which, in tandem with the fact that he was statutorily prohibited from possessing a firearm, constitutes a relatively serious offense. As to . . . "whether there is a reasonable belief that the suspect is armed", given Ms. Harry's report of Mr. Baker stealing her firearm and ammunition, the police had a reasonable belief that Mr. Baker was armed. As to . . . "whether there is a clear showing of probable cause" and "whether there is a strong showing that the suspect is within the premises to be searched", Ms. Harry's report of the stolen firearm and ammunition considered in tandem with [the] confirmation that Mr. Baker was present in the residence results in this [c]ourt's conclusion that there was a clear showing of both probable cause and that Mr. Baker was present at the residence they sought to search. As to . . . "whether there is a likelihood

- 7 -

that the suspect will escape", Ms. Harry had recently reported that Mr. Baker fled her residence following a domestic dispute, which supports the possibility that Mr. Baker may have followed suit in fleeing the residence if the police waited to obtain a search warrant. As to . . . "whether the entry was peaceable", the officers attempted to peaceably enter the residence of [Appellants]. Finally, as to . . . "whether there is a danger to police or others", Mr. Baker was suspected of engaging in a domestic dispute and thereafter stealing a firearm, which, in tandem with the fact that he was statutorily prohibited from possessing a firearm, suggests that the police could reasonably have believed there was a danger to them or others.

Given the above rationale, this [c]ourt is persuaded that the circumstances possessed an exigency rendering the warrantless search of the residence of [Appellants] permissible.

Trial Ct. Op. and Order, 11/6/17, at 12-14.

Appellants proceeded to a joint jury trial. The jury convicted Appellant Gray of obstructing administration of law and Appellant Baker of obstructing administration of law, hindering apprehension, and resisting arrest. On June 27, 2017, the trial court sentenced Appellant Gray to one to twenty-three months' incarceration and Appellant Baker to two to twenty-three months' incarceration, to be followed by twelve months' probation. Appellants did not file post-sentence motions.

Appellants filed timely notices of appeal and court-ordered Pa.R.A.P. 1925(b) statements, challenging the trial court's denial of their suppression motions. The trial court issued a Pa.R.A.P. 1925(a) opinion referring to its opinion and order of October 6, 2017.

In the appeal at 1063 MDA 2018, Appellant Gray raises the following question for our review: "Should [Appellant's] conviction be overturned based

on the fact that the trial court erred in failing to suppress the 'fruits' of an illegal search[?]" Appellant Gray's Brief at 4.

In the appeal at 1272 MDA 2018, Appellant Baker raises the following questions on appeal, which we have reordered:

[1.] Did law enforcement officers enter [Appellant Baker's] home in violation of the Pennsylvania and United States Constitutions such that the trial court erred in denying [Appellant Baker's] suppression motion and instructing the jury that no warrant was required?

[2.] Did the Commonwealth fail to present sufficient evidence to support [Appellant Baker's] felony conviction for hindering apprehension, where it failed to prove beyond a reasonable doubt that [Appellant Baker] knew the conduct liable to be charged against Isaiah Baker would constitute a felony of the first or second degree?

[3.] Did the Commonwealth fail to present sufficient evidence to prove beyond a reasonable doubt that [Appellant Baker] intended to hinder the apprehension of Isaiah Baker; where the evidence failed to show that [Appellant Baker] independently knew that officers had entered her home to apprehend him, or that officers communicated any intent other than to speak with Isaiah Baker as part of their investigation[?]

[4.] Did the Commonwealth fail to present sufficient evidence to meet its burden of proving beyond a reasonable doubt that [Appellant Baker] intended to obstruct the administration of law, where the Commonwealth failed to establish that [Appellant Baker] had any intent other than ensuring that a proper warrant was obtained[?]

[5.] Did the Commonwealth fail to present sufficient evidence to meet its burden of proving beyond a reasonable doubt that [Appellant Baker] intended to obstruct the administration of law, where the Commonwealth failed to establish that [Appellant Baker] had any intent other than ensuring that a proper warrant was obtained prior to the officers' entry into her home[?]

[6.] Did the Commonwealth fail to present sufficient evidence to meet its burden of proving beyond a reasonable doubt that

[Appellant Baker] resisted arrest, where the Commonwealth failed to establish that [Appellant Baker] was the subject of a lawful arrest?

Appellant Baker's Brief at 4-6.

We address Appellants' first issues together. Appellants contend that the police did not have a right to enter their residence without a warrant.

Appellant Gray asserts that,

> [l]ooking at the factors [used to determine whether exigent circumstances exist] and the heavy burden on the Commonwealth together with the fact that . . . exigent circumstances should be weighted against the Commonwealth, it is clear that the search of a home of [Appellants] was unreasonable. The gravity of the offense in question was minor and there was no likelihood that [Mr.] Baker would escape. Even though the police conceded the house was secure, they entered the home as though it was a hostile environment[,] and entry was made at night. Furthermore[,] as the officers testified, there was no likelihood that the weapon in question would be destroyed in that the weapon was not being used at the time of the incident.

Appellant Gray's Brief at 9-10.

Appellant Baker asserts that

> [w]hile the trial court ruled in connection with the suppression hearing that exigent circumstances existed to provide an exception to the requirement of a warrant, and instructed the jury at trial that a warrant was not required, this ruling and instruction are not supported by the evidence presented at either the suppression hearing or at trial.
>
> . . . In this case the officers testified directly that they could have [obtained a warrant], but chose not to. . . . [The police officers'] actions do not support a conclusion that they believed any exigency existed. They didn't force entry on the first contact at [Appellants'] front door. . . . The officers' reason for entering the home does not contemplate any exigency. They simply believed that [Mr. Baker] had committed a felony and that allowed them to enter [Appellants'] home to search for him and question him. Even if the officers believed that they had probable cause to arrest [Mr.

- 10 -

Baker], they could not have done so by entering [Appellants']
home without a warrant.

Appellant Baker's Brief at 20-22.

We review an order denying a motion to suppress as follows:

An appellate court's standard of review in addressing a challenge
to the denial of a suppression motion is limited to determining
whether the suppression court's factual findings are supported by
the record and whether the legal conclusions drawn from those
facts are correct. Because the Commonwealth prevailed before the
suppression court, we may consider only the evidence of the
Commonwealth and so much of the evidence for the defense as
remains uncontradicted when read in the context of the record as
a whole. Where the suppression court's factual findings are
supported by the record, the appellate court is bound by those
findings and may reverse only if the court's legal conclusions are
erroneous. Where the appeal of the determination of the
suppression court turns on allegations of legal error, the
suppression court's legal conclusions are not binding on an
appellate court, whose duty it is to determine if the suppression
court properly applied the law to the facts. Thus, the conclusions
of law of the courts below are subject to plenary review.

***Commonwealth v. Ford***, 175 A.3d 985, 989 (Pa. Super. 2017), *appeal*

*denied*, 190 A.3d 580 (Pa. 2018) (citation omitted).

Generally,

a search warrant is required before police may conduct any
search. Absent the application of one of a few clearly delineated
exceptions, a warrantless search or seizure is presumptively
unreasonable. This is the law under both the Fourth Amendment
to the United States Constitution and Article I, Section 8 of the
Pennsylvania Constitution.

One such exception to our well-established warrant requirement
is "exigent circumstances," which this Court has explained, as
follows:

The exigent circumstances exception to the warrant
requirement recognizes that some situations present a
compelling need for instant arrest, and that delay to seek a
warrant will endanger life, limb[,] or overriding law

> enforcement interests. In these cases, our strong preference for use of a warrant must give way to an urgent need for immediate action.

***Commonwealth v. Caple***, 121 A.3d 511, 517-18 (Pa. Super. 2015) (citations and quotation marks omitted).[6] "The Commonwealth must present clear and convincing evidence that the circumstances surrounding the opportunity to search were truly exigent, . . . and that the exigency was in no way attributable to the decision by the police to forego seeking a warrant."

***Commonwealth v. Rispo***, 487 A.2d 937, 940 (Pa. Super. 1985) (citation omitted).

A number of factors must be considered to determine whether exigent circumstances existed, including:

_____

[6] We note that our Supreme Court recently reiterated that Fourth Amendment rights are paramount in the search of a person's home. ***See Commonwealth v. Romero***, 183 A.3d 364, 405-06 (Pa. 2018) (opinion announcing the judgment of the court) (noting that even where the police had an arrest warrant for an individual who did not live at the defendant's residence, a warrant to search the residence was necessary absent exigent circumstances). Indeed, as the ***Romero*** Court noted,

> [t]he Fourth Amendment protects the privacy interests in all homes. To overcome that privacy interest, a warrant used to enter a home must reflect a magisterial determination of probable cause to believe that the legitimate object of a search is contained therein. . . . If entry into a residence is necessary to search for [an] individual, then the warrant must reflect a magisterial determination of probable cause to search that residence, regardless of whether the warrant is styled as an "arrest warrant" or a "search warrant."

***Id.*** at 403.

> (1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is strong reason to believe that the suspect is within the premises being entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, *i.e.*, whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified.
>
> Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or a danger to police or other persons inside or outside the dwelling.

*Ford*, 175 A.3d at 990 (quoting *Commonwealth v. Roland*, 637 A.2d 269, 270-71 (Pa. 1994)). We consider the totality of the circumstances "as seen through the eyes of the trained officer." *Id.* (citation omitted).

> Moreover,
>
> [e]xigent circumstances exist where the police reasonably believe that someone within a residence is in need of immediate aid. Additionally, it is widely recognized that situations involving the potential for imminent physical harm in the domestic context implicate exigencies that may justify limited police intrusion into a dwelling in order to remove an item of potential danger. The relevant inquiry is whether there was an objectively reasonable basis for believing that medical assistance was needed, or persons were in danger.

*Id.* (citations, brackets, and quotation marks omitted).

In *Rispo*, police observed a drug dealer enter and leave the defendant's house to obtain methamphetamine to complete a drug deal. *Rispo*, 487 A.2d at 938-39. The officers entered the home and arrested the defendant without a warrant. *Id.* at 939. This Court concluded that exigent circumstances did not exist to justify entry into the defendant's home because there was no

- 13 -

evidence that the defendant or other occupants of the home had become aware of the police surveillance, it was unlikely that the cash used to buy drugs would be destroyed, and "[t]he police could have kept the residence under covert surveillance in relative safety until a warrant was obtained." *Id.* at 941.

In *Commonwealth v. Martin*, 620 A.2d 1194 (Pa. Super. 1993) (*per curiam*), a woman saw her ex-husband in the defendant's home. *Martin*, 620 A.2d at 1195. The woman knew there were warrants out for her ex-husband's arrest and called the police to inform them of his whereabouts. *Id.* The police arrived at the defendant's house and informed the defendant that they had an arrest warrant and were going to search her house for the man. *Id.* The defendant objected to the search since the police did not have a search warrant. *Id.* Nevertheless, the officers searched the defendant's home and discovered the man in a hidden room on the third floor. *Id.* Following these events, the defendant was charged with hindering apprehension. *Id.* She filed a motion to suppress evidence of the discovery of the arrestee in her home, which the trial court denied. *Id.* This Court reversed, holding that, under *Steagald v. United States*, 451 U.S. 204 (1981), the arrest warrant for the man did not authorize the search of the home in the absence of exigent circumstances. *Id.* at 1196.

In *Commonwealth v. Wright*, 742 A.2d 661 (Pa. 1999), our Supreme Court contemplated 18 Pa.C.S. § 2711(b), which requires the seizure of

weapons in certain cases involving domestic violence, in the context of a warrantless search to obtain such weapons.[7]

In that case, the defendant forcefully removed his wife from their bed and then fired a shot from a nine-millimeter handgun, which grazed her scalp and fractured her skull. *Wright*, 742 A.2d at 662. The police arrested the defendant and secured the scene. *Id.* Approximately two hours later, without obtaining consent from the defendant or his wife, the police searched for and found the handgun that the defendant used. The defendant filed a motion to suppress the gun, claiming the police should have obtained a warrant to search the residence. *Id.* at 663. Our Supreme Court held that although Section 2711(b) suggests that an arresting officer is obligated to confiscate weapons used in the domestic violence incident, "the seizure of a weapon pursuant to Section 2711(b) is subject to the limits of existing Fourth Amendment jurisprudence." *Id.* at 664.

The Commonwealth also argued in *Wright* that exigent circumstances existed to satisfy an exception to the search warrant requirement. *Id.* However, as the Supreme Court noted:

> It is widely recognized that situations involving the potential for imminent physical harm in the domestic context implicate exigencies that may justify limited police intrusion into a dwelling in order to remove an item of potential danger. Indeed, some courts have gone so far as to suggest that a report of domestic

---

[7] Section 2711(b) states that "[t]he arresting police officer shall seize all weapons used by the defendant in the commission of the alleged offense[, as enumerated in Section 2711(a)]." 18 Pa.C.S. § 2711(b).

violence is sufficient, in and of itself, to warrant such an entry. Other courts have remained more circumspect.

**This is not, however, a case in which the delay occasioned by obtaining a warrant would have subjected a victim of domestic abuse to further risk of physical harm—at the time the search was conducted, the potential for imminent violence had been eliminated.**

*Id.* at 664-65 (citations omitted) (emphasis added).

In the instant matter, similar to the defendant in *Martin*, Appellants did not consent to the search of their home. The police entered and searched Appellants' residence despite Appellant Baker's protests that they needed a search warrant to do so. Further, the police did not have an arrest warrant for Mr. Baker, as they did for the individual sought in *Martin*, where it violated third-party Fourth Amendment rights to search a home without a search warrant. *See Martin*, 620 A.2d at 1196. Accordingly, unless exigent circumstances existed, the police did not have the authority to search Appellants' home.

Although the police officers may have suspected that Mr. Baker was armed, based on our review of the record, we agree with Appellants that exigent circumstances did not exist to support the warrantless entry of Appellants' residence. While Ms. Harry may have believed that Mr. Baker stole her firearm because she last saw the gun the night before the incident, there is no indication that she observed him taking it. In fact, Ms. Harry's gun was later located in her home.

Furthermore, the time of entry was at night, there was no apparent danger to the police or other persons in the residence, and Mr. Baker was not

fleeing from police. In fact, the police observed Mr. Baker walking from his car toward Appellants' house. Moreover, there was little likelihood that evidence could be destroyed or that Mr. Baker could escape from the home, since the police, including multiple state and local police officers, had arrived and were surveilling all of the exits to the residence. Indeed, Trooper Julock conceded that he could have obtained a warrant before approaching Appellants' home. *See* N.T. Suppression H'rg at 23.

Finally, Mr. Baker's alleged possession of a firearm did not create exigent circumstances. Mr. Baker allegedly stole a gun during an earlier incident with Ms. Harry in Fannett Township. Later, when Mr. Baker arrived at Appellants' house in Chambersburg, he was at a different location than the earlier incident, and Ms. Harry was not present. As in *Wright*, this was not a "case in which the delay occasioned by obtaining a warrant would have subjected a victim of domestic abuse to further risk." *See Wright*, 742 A.2d at 665. Since Appellant was no longer in Ms. Harry's presence, "the potential for imminent violence had been eliminated." *See id.* Moreover, there was no indication that Mr. Baker or any of the occupants of the home were aware of the police surveillance outside the home. *See Rispo*, 487 A.2d at 941.

Therefore, under these circumstances, the Commonwealth failed to establish clear and convincing evidence that there was a compelling need to enter Appellants' residence to arrest Mr. Baker. *See Caple*, 121 A.3d at 518. Although there was a concern that Mr. Baker may have been armed, there was no imminent threat of a risk to life, limb, or an overriding law enforcement

interest. ***See id.*** Accordingly, we conclude that the trial court erred when it found exigent circumstances justifying the warrantless entry into Appellants' home.[8] ***See Ford***, 175 A.3d at 989.

Judgments of sentence vacated. Orders denying suppression of evidence obtained during search of Appellants' home reversed. Remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/31/2019

---

[8] In light of our decision to reverse the trial court's suppression ruling and the possibility of further proceedings on remand, we decline to consider Appellant Baker's remaining challenges to the sufficiency of the evidence. On remand, it will be incumbent upon the Commonwealth to determine whether adequate evidence remains to proceed.