J-S73031-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SONYA MCNEILL, | : | |
| | : | |
| Appellant | : | No. 737 MDA 2019 |

Appeal from the Judgment of Sentence Entered April 4, 2019
in the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0001098-2018

BEFORE: SHOGAN, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED: FEBRUARY 7, 2020**

Sonya McNeill ("McNeill") appeals from the judgment of sentence imposed following her conviction of hindering apprehension.[1] We affirm.

On December 23, 2017, Harrisburg City Patrol Officer Christopher Auletta ("Officer Auletta") was working the overnight shift when he received a call regarding a domestic violence incident at McNeill's residence. When Officer Auletta arrived at McNeill's residence at approximately 12:30 a.m., he could hear screaming, and saw two children sitting on the front porch. One of the children indicated that Freddie Reid, Jr. ("Reid"), who had an active arrest warrant for aggravated assault, was inside the residence. The child led Officer Auletta into the house, where Officer Auletta could hear a woman yelling. Officer Auletta announced his presence several times, but received

---

[1] 18 Pa.C.S.A. § 5105(a)(1).

no response until he entered the kitchen, where McNeill and two younger females were arguing. Officer Auletta noticed that McNeill smelled of alcohol and had watery, red eyes. McNeill stated several times that Reid was not in the residence. Officer Auletta and two additional police officers proceeded to search the open areas on the first and second floors of the residence. Reid was found in an upstairs bedroom and arrested. "[McNeill] failed to cooperate with police, indicated that [Reid] was not there, resisted arrest, and tried to pull away and spin around when being detained." Order, 11/8/18, at 1-2.

On July 27, 2018, McNeill filed an Omnibus Pretrial Motion, including, *inter alia*, a Motion to Suppress, asserting that any evidence obtained through the warrantless, nighttime search of her residence for Reid must be suppressed. Following a suppression hearing, the suppression court denied McNeill's Motion to Suppress.

The matter proceeded to a jury trial, after which McNeill was convicted of hindering apprehension. The trial court subsequently sentenced McNeill to one year of county probation, 50 hours of community service, and a $100 fine. McNeill filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b)

Concise Statement of errors complained of on appeal.[2]

McNeill now raises the following issues for our review:

I. The suppression court found exigent circumstances justified in a warrantless, nighttime search of [McNeill's] home for a wanted suspect[,] when there was no evidence the suspect was armed[;] no one needed immediate assistance[;] there was no likelihood of escape, the police were not in hot pursuit of a fleeing felon[;] and no imminent danger prevented them from securing the residence and obtaining a search warrant. Did the court thus commit an error of law, or abuse its discretion in refusing to suppress evidence obtained from that search?

II. Police are not permitted to create exigent circumstances in order to justify a warrantless search. In this case, the police believed a wanted suspect was inside a home and posed a danger to everyone inside. When the police kept [McNeill] and her children inside the home and justified their need to search the home immediately because of the perceived danger to those inside, did the suppression court thus commit an error of law, or abuse its discretion in refusing to suppress evidence obtained from that unlawful search?

Brief for Appellant at 3-4.

We will address McNeill's claims together, as they are related. In her first claim, McNeill argues that the suppression court erred in denying her Motion to Suppress, because the police improperly conducted a warrantless search of her residence, without exigent circumstances. ***See id.*** at 8-25.

---

[2] McNeill's Concise Statement was untimely filed. However, as the trial court did not acknowledge the untimeliness of the Concise Statement, and was able to address McNeill's appeal issues, we will consider McNeill's claims. ***See Commonwealth v. Thompson***, 39 A.3d 335, 340 (Pa. Super. 2012) (stating that "[w]hen counsel has filed an untimely Rule 1925(b) statement and the trial court has addressed those issues[,] we need not remand and may address the merits of the issues presented.").

McNeill claims that the police had no reason to believe that Reid was armed at the time they decided to search McNeill's residence. *Id.* at 13-14. McNeill also asserts that any information leading the police to believe that Reid was inside the residence was contradictory, because one witness indicated that Reid was inside, and both McNeill and another witness indicated that he was not. *Id.* at 15. According to McNeill, the police officers could not hear any noise coming from within the house, and McNeill had asked them to leave. *Id.* at 16. Further, McNeill asserts that Reid was not likely to escape from the residence, and the police forcibly entered her home. *Id.* at 16-17. McNeill also specifically highlights the fact that the police officers searched her residence in the middle of the night, a fact which, McNeill believes, indicates an even more serious invasion of privacy, absent evidence that anyone inside the home was in imminent danger. *Id.* at 18-20, 21-25. *But see also id.* at 20 (wherein McNeill concedes that the officers' *entry* was justified to ascertain whether anyone inside was in danger or needed immediate assistance).

In her second claim, McNeill argues that "the police created the very exigency they relied on." *Id.* at 26. Specifically, McNeill contends that "[t]he officers' concern that the home needed to be searched immediately, because the occupants were in danger, is self-serving because the police created that danger by keeping the occupants inside the home while they searched it." *Id.* at 27.

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to

- 4 -

determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa. Super. 2015) (citation, brackets and ellipses omitted).

Art. 1, Sec. 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution protect against unreasonable searches and seizures. The expectation of privacy protected [by] the United States and Pennsylvania Constitutions has been held to be greatest in one's home. A warrantless search of a residence is *per se* unreasonable unless justified by a specific exception to the warrant requirement.

*Commonwealth v. Richter*, 791 A.2d 1181, 1184 (Pa. Super. 2002) (*en banc*). "A warrantless search of a private residence may take place … if the police are acting under exigent circumstances." *Commonwealth v. McAliley*, 919 A.2d 272, 276 (Pa. Super. 2007). The Commonwealth must also establish that "the exigency was in no way attributable to the decision by the police to forego seeking a warrant." *Commonwealth v. Gray*, 211 A.3d 1253, 1261 (Pa. Super. 2019) (citation and quotation marks omitted).

The following factors should be considered in determining whether exigent circumstances exist:

> (1) the gravity of the offense; (2) whether there is a reasonable belief that the suspect is armed; (3) whether there is a clear showing of probable cause; (4) whether there is a strong showing that the suspect is within the premises to be searched; (5) whether there is a likelihood that the suspect will escape; (6) whether the entry was peaceable; (7) the time of entry, *i.e.*, day or night; (8) whether the officer was in hot pursuit of a fleeing felon; (9) whether there is a likelihood that evidence may be destroyed; and (10) whether there is a danger to police or others.

***Commonwealth v. Walker***, 836 A.2d 978, 981 (Pa. Super. 2003). "These factors are to be balanced against one another in determining whether the warrantless intrusion was justified." ***Richter***, 971 A.2d at 1185 (citation omitted); ***see also Gray***, 211 A.3d at 1261 (explaining that the totality of the circumstances must be considered "as seen through the eyes of the trained officer." (citation and quotation marks omitted)).

Further,

> exigent circumstances exist where the police reasonably believe that someone within a residence is in need of immediate aid. Additionally, it is widely recognized that situations involving the potential for imminent physical harm in the domestic context implicate exigencies that may justify limited police intrusion into a dwelling in order to remove an item of potential danger. The relevant inquiry is whether there was an objectively reasonable basis for believing that medical assistance was needed, or persons were in danger.

***Gray***, 211 A.3d at 1261.

The suppression court addressed McNeill's claims as follows:

> Applying [the exigency] factors to the case at hand, [the suppression court] conclude[s] that the entry by police into the

- 6 -

subject premises was proper. First, the crime at issue was one of violence. That is, the police were investigating a domestic disturbance after receiving a call from a neighbor. Second, the police received information from a little boy sitting on the porch that [Reid,] who had an active warrant[,] was inside. [Officer Auletta,] who has been an officer since 2009 and whose testimony [the court] found credible, testified that he feared that someone inside could be armed. As the officer approached the residence, the lights were on, the front door was open, and he could hear yelling and screaming. This is sufficient probable cause to believe that a domestic dispute was ongoing or in progress and possibly someone [was] in danger. Additionally, as there was someone in the house already with an active warrant, the probability of him escaping if not swiftly apprehended [was] high. It was reasonable for police to believe that someone who has an active warrant and wanted on aggravated assault charges would try to flee the scene. Next, Officer Auletta testified that the front door was open, the lights were on, and that he followed the little boy on the front porch inside the home. Moreover, Officer Auletta testified that they were able to search the residence without incident. The fact that the entry was not forcible aids in showing the reasonableness of police attitude and conduct.

Applying the seventh factor, … the entry was made during the early morning hours. Although it was dark outside when the entry was made, the police responded immediately to the call for domestic violence and indicated that the lights were on when they approached the house. With regard to the other factors, [the suppression court] note[s] that Officer Auletta testified that he was concerned that someone was armed and thus feared for the safety [of] others (including a small boy [who] was sitting on the porch …). If the police had to wait for a warrant to enter the residence, there was a high possibility that the suspect (or suspect at the time) would escape or that he would [h]arm an individual inside the residence. As such, based on all of the aforementioned, [the court] find[s] that exigent circumstances existed to permit the police to enter the residence.

Order, 11/8/18, at 3-4 (quotation marks, citation, brackets, and footnote omitted).

Our review confirms that the record supports the suppression court's factual findings. At the suppression hearing, Officer Auletta testified that he was on duty on December 23, 2017, in full uniform, when he received a call from a third party regarding a domestic violence incident at McNeill's residence. N.T. (Suppression), 10/9/18, at 4-5. According to Officer Auletta, the caller explained that one of McNeill's children called her to say that McNeill was fighting with Reid, and the child was "worried so she wanted the police to go make sure everything was okay." *Id.* at 5.

Officer Auletta testified that he found Reid's name, which he recognized, connected with McNeill's, and noticed that Reid was wanted for an aggravated assault that he previously had committed against McNeill. *Id.* at 5-6. Officer Auletta stated that there was an active felony arrest warrant for Reid, and that the address listed on the arrest warrant was the same address at which the reported domestic incident was occurring. *Id.* at 6; *see also id.* (wherein Officer Auletta indicated that the same address also appeared on Reid's driver's license). Officer Auletta then called for two additional officers to assist him. *Id.*

Officer Auletta testified that as he and the other officers approached the residence at approximately 12:30 a.m., they could hear multiple individuals screaming from inside the home. *Id.* at 7, 17. The officers also noticed that the door was open, and there were two children sitting on the front porch. *Id.* at 7; *see also id.* at 8 (wherein Officer Auletta stated that the door was fully ajar, and he could see people in the kitchen arguing). When Officer Auletta

asked the children if Reid was inside the home, the older of the two indicated that he was not, but the younger child stated that Reid was inside, and told Officer Auletta to follow him. *Id.* at 8, 9, 19; *see also id.* at 19 (wherein Officer Auletta estimated that the younger boy was about 4 or 5 years old). Officer Auletta testified that he followed the younger boy inside the home, and announced his presence multiple times without receiving a response. *Id.* at 9, 19.

Officer Auletta proceeded into the residence and recognized McNeill, who was arguing with two younger females. *Id.* According to Officer Auletta, McNeill's eyes were red and watery, and he could smell alcohol. *Id.* at 10. Officer Auletta testified that he asked McNeill what was going on, and she told him to get out of her house. *Id.* at 9-10. Officer Auletta stated that he had asked McNeill several times whether Reid was in the house, and she replied that he was not there. *Id.* at 10-11. According to Officer Auletta, the younger child told one of the other officers that Reid was upstairs. *Id.* at 11.

Additionally, Officer Auletta explained to McNeill that he had information that Reid had an active arrest warrant, which listed the address of her residence; they had been called to her residence and could hear yelling; and the officers would complete a "body check" for Reid for safety. *Id.* at 8, 9-11; *see also id.* at 24-25 (wherein Officer Auletta stated that he did not know for sure whether Reid was armed, but because the arrest warrant was for a felony aggravated assault, the officers "took it that he could be armed"), 25 (explaining, "we treat everybody as armed until we search and make sure

they are not armed."). After the officers searched the open areas of the first floor, one of the officers stated that he could hear someone upstairs. *Id.* at 12. The officers found Reid in an upstairs bedroom drinking a beer, and arrested him without incident. *Id.*

Importantly, McNeill does not contest the police officers' authority to enter her home. Brief for Appellant at 20; N.T. (Suppression), 10/9/18, at 29. McNeill similarly concedes that domestic violence is considered a high-gravity offense, and that the police had probable cause to believe that Reid was inside the residence. N.T. (Suppression), 10/9/18, at 29.

Given the totality of the circumstances, we conclude that the suppression court did not err in finding that exigent circumstances supported the warrantless search. The police received a call regarding a domestic violence situation involving McNeill, which was still ongoing when the officers arrived; the police received the call after midnight; the police were informed that Reid was inside of the residence; Reid had an active arrest warrant for a previous crime of violence committed against McNeill; there were other individuals inside the home at the time, including young children; and the call for assistance was initiated after a child in the home had alerted a neighbor to the situation and asked for help because she was concerned. *See Gray*, 211 A.3d at 1261 (explaining the exigency that may arise from domestic violence incidents); *Richter*, 971 A.2d at 1185 (stating that a warrantless entry made in response to a 911 call concerning a domestic dispute was supported by exigent circumstances, and specifically indicating that "the fact

- 10 -

it was dark[] underscores the delay (and perhaps the impracticability of) obtaining a warrant, and hence serve[s] to justify proceeding without one." (citation marks and quotation omitted)).  Additionally, under these circumstances, it was reasonable for the police officers to believe that McNeill and the children could be in danger, and that there was a risk that Reid would flee the scene if they waited for a search warrant.  Thus, we cannot grant McNeill relief on her claims.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/07/2020