J-S21025-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MALIK CARRINGTON | : | |
| | : | |
| Appellant | : | No. 1204 EDA 2023 |

Appeal from the Judgment of Sentence Entered April 26, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004187-2022

BEFORE:  LAZARUS, P.J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED DECEMBER 18, 2024**

Appellant Malik Carrington appeals from the judgment of sentence imposed following his convictions for violations of the Uniform Firearms Act (VUFA).[1]  Appellant argues that the trial court erred in denying his motion to suppress.  We affirm.[2]

The trial court summarized the underlying facts of this matter as follows:

On May 4, 2022, Officers Khalil Nock and Robert Vasquez, both assigned to the Violent Crimes Reduction Team in the 12th Police District, were patrolling the 6000 block of Allman Street.  They were investigating a recent robbery in the area.  At around 10:20 p.m., the officers observed a black Ford Fusion committing multiple traffic violations.  The car disregarded two stop signs while turning right onto Edgewood Street and then right onto

---

[1] 18 Pa.C.S. §§ 6105, 6106, and 6108, respectively.

[2] On May 28, 2024, Appellant filed a Motion for Extension of Time to File a Reply to the Commonwealth's Brief.  Upon review, we grant this motion and accept the Reply Brief he filed on June 11, 2024.

Kingsessing Avenue. It eventually turned back onto the 6000 block of Allman Street where it stopped after officers initiated a traffic stop.

Officer Nock approached the driver's side of the Ford Fusion, while Officer Vasquez approached the passenger's side. Inside the car, Appellant was seated in the driver's seat, and a man identified as Jamal [(the passenger)] was in the passenger seat. When Officer Nock asked Appellant about his driving, Appellant explained that he was on his way to the hospital to see his daughter. Officer Nock asked Appellant why he circled the block if he was going to the hospital. Appellant was unable to provide a reasonable explanation. Officer Nock then asked Appellant for his driver's license, vehicle registration, insurance, and whether Appellant had a license to carry a firearm, to which Appellant responded that he did not. Officer Nock asked Appellant if there were any drugs or weapons in the car. Before he denied, Appellant hesitated briefly and looked down in an evasive manner.

Officer Nock testified that Appellant appeared nervous and had shaky hands during their interaction. Once Officer Nock had Appellant's ID and paperwork, he returned to his patrol car. Officer Nock called for backup and told his partner that Appellant was extremely nervous. Officer Vasquez confirmed [the passenger's] identity and that he had a valid permit to carry a firearm.

When backup officers arrived, Officer Nock returned to Appellant's car and asked Appellant to step out. Before Appellant exited, Officer Nock again asked Appellant whether there was a gun in the car. Appellant, who was still seated in the car, admitted that a gun was under his seat. As Appellant was exiting the vehicle and before he was secured, Officer Nock recovered the gun which was directly under Appellant's seat and within Appellant's reach.

Trial Ct. Op., 9/1/23, at 2-3 (record citations omitted).

On May 4, 2022, Appellant was arrested and charged with the aforementioned offenses. Appellant subsequently filed a motion to suppress evidence, which the trial court denied. After Appellant was convicted of all

charges following a bench trial, the trial court sentenced Appellant to two and one-half to five years' incarceration followed by five years' probation.

Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P 1925(b) statement.  The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises the following issues for review:

1. Did the trial court err and abuse its discretion by failing to suppress evidence as fruit of the poisonous tree where an officer unlawfully prolonged a routine traffic stop without reasonable suspicion to conduct an unrelated investigation into whether [Appellant] illegally possessed a firearm?

2. Did the trial court err and abuse its discretion by failing to suppress a firearm where the weapon was seized from [Appellant's] car without a warrant or an exception to the warrant requirement?

Appellant's Brief at 4.

We address Appellant's claims together.  Initially, we note that Appellant does not challenge the legality of the traffic stop.  Instead, Appellant argues that the trial court erred in denying his motion to suppress because the police (1) unlawfully extended the traffic stop to conduct an unrelated investigation into whether Appellant possessed a firearm; and (2) seized a firearm from Appellant's car without a warrant.  *Id.* at 13-29.

In support, Appellant argues that at the time of the vehicle stop, "the traffic violations had already occurred" and "no further investigation, as to the traffic violations[] was required."  *Id.* at 18.  Appellant argues that "the officer's inquiries focused on whether other crimes had occurred or were

occurring" because he "asked questions about the presence of guns and drugs[,]" and "[w]hile the presence of a gun in the car may have been relevant to [o]fficer safety, the presence of illegal drugs was not." *Id.* As such, Appellant contends that the officer impermissibly extended the traffic stop and subjected Appellant to a new investigative detention, which was unsupported by reasonable suspicion, and that the firearm recovered from his vehicle should have been suppressed as fruit of the poisonous tree. *Id.* at 22-27. Finally, Appellant argues that the firearm should have been suppressed because police did not have a warrant or establish an exception to the warrant requirement and had no other basis to search the vehicle. *Id.* at 27-29. Therefore, Appellant concludes that the trial court erred in denying his motion to suppress.

The following principles govern our review of an order denying a motion to suppress:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Gray*, 211 A.3d 1253, 1260 (Pa. Super. 2019) (citation omitted). "It is within the suppression court's sole province as factfinder to

- 4 -

pass on the credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Thomas***, 273 A.3d 1190, 1195 (Pa. Super. 2022) (citations omitted).

> "Both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." ***Commonwealth v. Heidelberg***, 267 A.3d 492, 502 (Pa. Super. 2021) (*en banc*) (citation omitted), *appeal denied*, 279 A.3d 38 (Pa. May 25, 2022). "As a general rule, 'a warrant stating probable cause is required before a police officer may search for or seize evidence.'" ***Id.*** (citation omitted). Regarding automobiles, "Article I, Section 8 affords greater protection to our citizens than the Fourth Amendment, and . . . the Pennsylvania Constitution requires both a showing of probable cause and exigent circumstances to justify a warrantless search of an automobile." ***Commonwealth v. Alexander***, 243 A.3d 177, 181 (Pa. 2020)[.] "Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable." ***Heidelberg***, 267 A.3d at 502 (citation omitted).

***Commonwealth v. McMahon***, 280 A.3d 1069, 1071-72 (Pa. Super. 2022) (some formatting altered).

Generally, a motor vehicle stop is an investigative detention. ***See Commonwealth v. Spence***, 290 A.3d 301, 314 (Pa. Super. 2023). "[A]n investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest." ***Id.*** (citation omitted). "Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity." ***Id.*** (citation omitted).

In the context of a vehicle stop, the United States Supreme Court has explained that

> [t]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission" – to address the traffic violation that warranted the stop, and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose. Authority for the seizure thus ends when [the] tasks tied to the traffic infraction are – or reasonably should have been – completed.
>
> . . . a traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a warning ticket. An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.

*Rodriguez v. United States*, 575 U.S. 348, 354-55 (2015) (citations omitted and formatting altered). In short, "[t]he seizure remains lawful only so long as [unrelated] inquiries do not measurably extend the duration of the stop." *Id.* at 355 (citations omitted and formatting altered).

During a vehicle stop, a police officer has the authority to check "vehicle registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or secure such other information" reasonably necessary to enforce the Vehicle Code. *Commonwealth v. Clinton*, 905 A.2d 1026, 1030 (Pa. Super. 2006) (citation omitted). Additionally, an officer "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or

dispelling the officer's suspicions." *Spence*, 290 A.3d at 314 (citation omitted).

This Court has held that an officer may ask the driver whether there are weapons in the car, as it presents only a "minute intrusion" and falls "unquestionably and completely on the side of officer safety." *Clinton*, 905 A.2d at 1031 (emphasis omitted).

To effectuate the safety of officers, during "a lawful traffic stop, the officer may order the driver of a vehicle to exit the vehicle until the traffic stop is completed, even absent a reasonable suspicion that criminal activity is afoot." *Commonwealth v. Wright*, 224 A.3d 1104, 1109 (Pa. Super. 2019) (citation omitted and formatting altered); *see also Commonwealth v. Pratt*, 930 A.2d 561, 567-68 (Pa. Super. 2007) (noting that "allowing police officers to control all movement in a traffic encounter . . . is a reasonable and justifiable step towards protecting their safety" (footnote omitted)).

Finally, Pennsylvania courts "have continually recognized that a police officer may conduct a limited protective search of a vehicle where he possesses reasonable suspicion that the vehicle's occupant poses a risk of danger and has immediate access to weapons." *Commonwealth v. Blackwell*, 518 EDA 2022, 2023 WL 3319058 at *4 (Pa. Super. filed May 9, 2023) (unpublished mem.) (citations omitted).[3]

---

[3] *See generally* Pa.R.A.P. 126(b) (noting that unpublished memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

- 7 -

This Court has explained:

In [***Michigan v. Long***, 463 U.S. 1032 (1983)], the Supreme Court applied the principles announced in ***Terry v. Ohio***, 392 U.S. 1 (1968), to a search of the passenger compartment of a vehicle for weapons:

> Our past cases indicate [ . . . ] that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. ***See Terry***, 392 U.S.[ ] at 21]. '[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' ***Id.*** at 27. If a suspect is 'dangerous,' he is no less dangerous simply because he is not arrested.

***Long***, 463 U.S. at 1049-50 (footnote omitted).

The Court emphasized that this holding does not permit police to conduct a search of a vehicle during every investigative stop. ***Id.*** at 1050 n.14. "A ***Terry*** search, unlike a search without a warrant incident to a lawful arrest, is not justified by any need to prevent the disappearance or destruction of evidence of crime. The sole justification of the search is the protection of police officers and others nearby." ***Id.*** (citation and quotation omitted). The Court stated that an officer must therefore have reasonable suspicion that the person subject to the stop has a weapon in order to conduct a lawful search of the passenger compartment of a vehicle at the time of the stop. ***Id.***

*Commonwealth v. Cartagena*, 63 A.3d 294, 298-99 (Pa. Super. 2013) (*en banc*) (footnotes omitted).

Here, as noted previously, Appellant does not challenge the legality of the initial traffic stop. With respect to Appellant's claims concerning the officers' conduct during the stop and the subsequent sweep of the vehicle, the trial court explained:

> Officer Nock obtained Appellant's driver's license, vehicle registration and insurance when he initially approached Appellant's car. The officer also inquired about the presence of weapons or drugs and whether Appellant had a license to carry firearms - something he was permitted to do. During this interaction . . . Officer Nock suspected that Appellant was unlawfully in possession of a firearm. After running Appellant's information through various databases in the police vehicle, Officer Nock went back to the Ford Fusion and asked Appellant exit the vehicle. As Appellant was preparing to exit, Officer Nock asked him a second time about the presence of weapons. After the second inquiry, Appellant admitted that a gun was under his seat. For [the] officers' safety, Officer Nock immediately recovered the firearm which was directly under Appellant's seat and within his reach. While Officer Nock was securing the firearm, Officer Vasquez took Appellant into custody.
>
> Officer Nock did not exceed the permissible scope of his authority by asking Appellant to exit the vehicle because the initial traffic stop had not concluded. Indeed, Appellant was not provided with a citation, warning[,] or any indication that he was free to leave. . . .
>
> *       *       *
>
> Officer Nock articulated several specific factors justifying the warrantless seizure of the gun within Appellant's car. First, Appellant was stopped for committing multiple traffic violations. Next, the car stop took place at night, in a high crime area, where there had been recent robberies. When Officer Nock inquired about Appellant's driving behavior, Appellant gave a dubious response. In addition, Appellant was nervous, and his hands were shaking during his interaction with Officer Nock. When Officer

- 9 -

Nock asked Appellant whether he had a weapon or drugs in the car, Appellant appeared evasive and hesitated before responding. Officer Nock's testimony in this regard was corroborated by his bodycam footage, which showed Appellant hesitate and look down before quietly answering in the negative. Finally - and most important - Appellant admitted that he had a firearm under his seat in response to Officer Nock's second inquiry about weapons. Not only was Officer Nock justified in securing the firearm for [the] officers' safety, Appellant did not have a license to carry firearms and was unlawfully in possession of the gun, thus providing probable cause to arrest Appellant.

Trial Ct. Op. at 5, 6-7 (some formatting altered).

Following our review, we conclude that the trial court's factual findings are supported by the record and discern no error in the trial court's legal conclusions. *See Gray*, 211 A.3d at 1260. We agree with the trial court that the officers were permitted to ask Appellant about whether there were firearms in the vehicle to ensure officer safety and to instruct Appellant and the passenger to exit the car as part of the initial traffic stop. *See Clinton*, 905 A.2d at 1031; *see also Wright*, 224 A.3d at 1109; *Pratt*, 930 A.2d at 567-68. Further, although Officer Nock asked an unrelated question concerning whether there were drugs in the vehicle, it did not render the seizure unlawful because the questioning did not "measurably extend the duration of the stop." *See Rodriguez*, 575 U.S. 348 at 355. Additionally, based on the totality of the circumstances, we agree with the trial court that Officer Nock was justified in performing a limited protective sweep of Appellant's vehicle while conducting an investigative detention at night in a high-crime area, especially given Appellant's statement that he had a firearm under his seat during the stop. *See Blackwell*, 2023 WL 3319058, at *4;

*see also Long*, 463 U.S. at 1049-50; *Cartagena*, 63 A.3d at 298-99.

Therefore, the trial court properly denied Appellant's motion to suppress.

Accordingly, Appellant is not entitled to relief.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>12/18/2024</u>